JOHN J. CONNELLY, Plaintiff, v. DEPARTMENT OF AGRICULTURE AND MARKETS OF THE STATE OF NEW YORK; PETER G. TEN EYCK, as Commissioner of the Department of Agriculture and Markets of the State of New York; THOMAS S. CROWE, as an Inspector and/or Deputy of the Department of Agriculture and Markets of the State of New York; RAY HOLLENBECK, as an Inspector and/or Deputy of the Department of Agriculture and Markets of the State of New York; and JOHN T. PRICE, an Infant, by GEORGE PRICE, His Guardian ad Litem, Defendants.

Supreme Court, Special Term, Broome County, February 20, 1937.

*Mangan & Mangan [Frank J. Mangan of counsel], for the plaintiff.*

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor-General, and John C. Crary, Assistant Attorney-General, of counsel], for the defendants Department of Agriculture and Markets of the State of New York; Peter G. Ten Eyck, as Commissioner, etc.; Thomas Crowe and Ray Hollenbeck, as inspectors, etc.*

*Samuel H. Pearis, for the defendant John T. Price, an infant, by George Price, his guardian ad litem.*

*Harry S. Travis, for the Independent Truckers Association, amicus curiæ.*

McNAUGHT, J. The motion being based upon the contention that the complaint fails to state facts sufficient to constitute a cause of action, we are restricted to the allegations of the complaint, which are to be taken as admitted.

The complaint must be liberally construed, and every intendment and fair inference must be drawn in favor of the pleading. If the plaintiff is entitled to maintain his alleged cause of action on any theory of the facts set forth in the complaint, the motion must be denied.

By chapter 360 of the Laws of 1933, article 16-A was added to the Agriculture and Markets Law. The act covered the subject-matter of former sections 222–228, which were repealed. Article 16-A so enacted related by its title to " Weighing and Selling of Coal, Coke and Charcoal." The article as then enacted governed the sale of coal and coke, the issuance of weight tickets, and provided for the licensing of weighmasters.

By chapter 546 of the Laws of 1936, in effect May 15, 1936, the article was substantially amended, sections renumbered, and two new sections, 197-f and 197-g, enacted.

Section 197-f provided in substance that all vehicles used in the transportation of coal or coke should have conspicuously marked on the exterior on each side the name of the owner, together with the word coal and/or coke in letters of a specified size.

Section 197-g, as so enacted, deals specifically with anthracite coal brought into the State of New York by motor truck. By

such section it is provided that any coal brought into the State by motor truck must be accompanied by a certificate of origin, showing, (a) the name and location of the mine, breaker or place of production, and the name of the owner or lessee of the mine or breaker; (b) the size and weight of the anthracite; (c) the name and address of the person claiming ownership of the anthracite; (d) the name and address of the driver of the truck hauling the anthracite; (e) the name and address of the person or persons to whom the anthracite is to be delivered, or if not intended for delivery to any particular person, but to be peddled from door to door, a statement to that effect. It likewise provides (Subd. 2) that it is unlawful for any person to haul, transport, purchase or sell in the State of New York any anthracite brought into the State by motor truck, except in accordance with the provisions of the section. By the provisions of subdivision 3, no anthracite brought into the State by motor truck is to be hauled, transported, purchased or sold in this State unless accompanied with a certificate of origin and unless a copy of such certificate is filed as provided in the section. By subdivision 4 it is provided: "Every driver of a truck bringing anthracite into the State of New York shall, upon crossing the border of the State, proceed forthwith to the nearest stationary scales suitable for weighing coal or coke which are located within this State and which have been tested and sealed by the official charged with such testing, to have said anthracite weighed in accordance with the requirements of this article, and shall then and there file a copy of the required certificate of origin with the licensed weighmaster."

The plaintiff became a licensed weighmaster in the year 1933, under the provisions of section 197-e of article 16-A, and such license was duly renewed for the specified statutory period of three years from July 1, 1936.

The complaint is somewhat voluminous, containing fifteen pages and seventeen numbered paragraphs. Briefly summarized, the plaintiff alleges that he operates and for many years last past has operated a place of business for the sale of gasoline, oils and automobile accessories; that for more than three years he has maintained upon his property at his place of business weighing scales which have been duly certified, and that he has been qualified to act as a weighmaster under license from the Commissioner of Agriculture and Markets of the State of New York. It is also set forth that in connection with his business, and with the authority vested in him by his license as a weighmaster, he has built up and developed a lucrative and paying business by reason of the income derived from his fees as a weighmaster, and in the sale of gasoline, oil, auto-

mobile accessories, and the servicing of trucks engaged in the transportation of coal from the State of Pennsylvania to or through the city of Binghamton. The complaint then sets forth in proper allegations that the defendants are enforcing the provisions of article 16-A, and as a result the business of the plaintiff as a weigh-master has ceased, and his business in the sale of gasoline, oils and automobile accessories has been largely decreased by reason of the fact that the owners of trucks transporting coal and coke, by reason of the provisions of section 197-g, have been compelled to stop at scales maintained by the weighmaster having the place of business nearest to the line between the States of Pennsylvania and New York, in this case being the defendant Price. The complaint then sets forth that there has thereby been created a monopoly in the said defendant Price; that by the provisions of article 16-A the plaintiff has been deprived of the liberty of contract, by for-bidding owners of trucks conveying coal to the State of New York from the State of Pennsylvania to employ the plaintiff to weigh the same, although the plaintiff is a duly licensed weighmaster; that such article 16-A is unconstitutional and void, in that it abridges the privileges and immunities of the plaintiff and deprives the plaintiff, without due process of law, of his property, denies to the plaintiff the equal protection of the law, in violation of the Fourteenth Amendment to the Constitution of the United States, and sections 1 and 6 of article 1 of the Constitution of the State of New York. The complaint further alleges that such provisions are void and unconstitutional, in that they are an unreasonable and unlawful burden upon interstate commerce; that such provisions are also an unconstitutional and unreasonable attempt to exercise alleged police powers of the State, and an unlawful attempt to regulate persons, firms, associations and corporations in a lawful private business. Plaintiff prays that article 16-A, and particularly section 197-g, be adjudged and decreed unconstitutional, and that the defendants be restrained from the enforcement thereof.

We have been favored with able and exhaustive briefs by counsel, discussing all of the numerous questions which might arise in the consideration and determination of this motion.

The legislative enactment involved contains provisions which unquestionably raise grave constitutional questions.

Whether the act is justified under and by virtue of the police power involves the question of whether the State is justified in interposing its authority, because the conditions sought to be affected clearly appear to be in the interests of the public generally, as distinguished from those of a particular class and require such interference, and further, that the means are reasonably necessary

for the accomplishment of the purpose, and not unduly oppressive upon individuals. (*Lawton* v. *Steele*, 152 U. S. 133, 137; *Mayflower Farms, Inc.*, v. *Ten Eyck*, 297 id. 266; 56 S. Ct. 457; *Colon* v. *Lisk*, 153 N. Y. 188; *Wright* v. *Hart*, 182 id. 330.)

Whether the statute is an interference with, and the imposition of a burden upon interstate commerce, is not free from doubt. Whether the statute conflicts with the equal protection clause of the Federal Constitution, or is in violation of the provisions of the State Constitution, presents a question requiring most serious consideration.

The allegations of the complaint, the facts discussed, the arguments set forth in the briefs of counsel, and the language of section 197-g itself, render quite appropriate the language of our Court of Appeals in discussing a statute relative to licensing those engaged in the business or practice of undertaking, where the court said: " We cannot refrain from the thought that the act in question was conceived and promulgated in the interests of those then engaged in the undertaking business and that the relation which the business bears to the general health, morals and welfare of the State had much less influence upon its originators than the prospective monopoly that could be exercised with the aid of its provisions." (*People* v. *Ringe*, 197 N. Y. 143, 151.)

We are, however, confronted at the outset of a consideration of the motion, with a serious question which does not involve a determination of the constitutionality of the statute.

It is too well settled to require the citation of authority that courts are not to anticipate and decide questions of constitutionality in advance of the necessity of decision. Courts cannot abstractly pass on the conformity of statutes to constitutional provisions. We are, therefore, compelled to determine first whether the plaintiff is so directly affected that he is in a position to raise and urge the unconstitutionality of the provisions of section 197-g.

The section in question applies to those who haul, transport, purchase or sell anthracite brought into the State of New York by motor truck. Those engaged in the business of transportation are the parties who are required to have the certificate of origin specified in subdivision 1. Those who haul, transport, purchase or sell anthracite are the parties whom subdivision 2 declares shall do so only in accordance with the provisions of the section. Subdivision 3 provides that no anthracite shall be transported within the State unless it is accompanied by the certificate of origin, a copy of which has been filed, and, therefore, relates clearly only to those who " haul and transport." Subdivision 4 relates to the obligations resting upon the driver of a truck bringing anthracite into the State of

New York, and provides that he shall proceed forthwith to the nearest stationary scales, have the anthracite weighed in accordance with the requirements of the section and file with the licensed weighmaster a copy of the required certificate of origin.

Section 197-g, therefore, clearly imposes no duty, requires no act, specifies no regulation of conduct upon the plaintiff, nor does it limit in any manner the privileges or rights of the plaintiff as a licensed weighmaster.

The plaintiff is not a producer of coal; he alleges no claim of ownership; he is not the driver of a truck; he is not hauling, transporting, purchasing or selling anthracite in the State of New York, and he is not directly affected by the provisions of the section.

True, the plaintiff is a licensed weighmaster in the State of New York. True, he operates and maintains a place of business in the State of New York, and undoubtedly (and it must be assumed to be true in the determination of this motion) he has established a profitable business as a weighmaster and in the servicing of trucks. Unquestionably the requirement of the statute that the driver of a truck conveying anthracite upon crossing the State line shall proceed to the nearest licensed weighmaster's scales, has resulted detrimentally to plaintiff's business. However, can a party not required to perform any duty, with no obligation imposed upon him, because of the privilege which has been extended authorizing him to act as a licensed weighmaster, maintain an action to declare unconstitutional the provisions of a statute and restrain its enforcement, because the exercise of legislative discretion has interfered with and decreased his business?

The statute in no way restricts, restrains or changes the rights or authority of the plaintiff as a licensed weighmaster. By a provision which does not directly affect the plaintiff, and of which there may be the gravest doubt as to its validity, business of the plaintiff has been diverted. He has sustained a loss of patronage, not because he has been deprived of any right vested in him, not because he has been restricted in the exercise of the privileges his license as a weighmaster entitles him to enjoy, but because of the enactment of a requirement resting upon individuals engaged in a business with which he is not directly connected or concerned. The plaintiff is in the position of one who seeks a determination that a statute is unconstitutional, without showing that his rights or privileges are restricted, curtailed, destroyed or directly affected by the provisions of such statute.

It is a well-established general rule, applying in criminal as well as in civil cases, that no one can plead the unconstitutionality of a

law, except a person directly affected by the provisions thereof. (*Collins* v. *State of Texas*, 223 U. S. 288, 296; *Sprout* v. *City of South Bend, Ind.*, 277 id. 163; 48 S. Ct. 502; *People* v. *Sanger*, 222 N. Y. 192, 194; *People ex rel. Durham R. Corp.* v. *La Fetra*, 230 id. 429, 440; *Lang's Creamery, Inc.*, v. *City of Niagara Falls*, 251 id. 343, 347.)

In *Sprout* v. *City of South Bend, Ind.* (*supra*), the court had under consideration an ordinance of the city of South Bend which prohibited operation of motor buses on its streets unless licensed by the city. The ordinance prescribed certain license fees and then provided before the license could issue the applicant must file with the city a contract of liability insurance, which insurance must be furnished by a company authorized to do business within the State of Indiana. Sprout claimed the ordinance violated the Fourteenth Amendment to the Federal Constitution, in that it required insurance to be furnished, issued by a company authorized to do business in Indiana, and discriminated against other insurance companies. The Supreme Court of the United States said: " The further objection that the requirement discriminates against insurance companies not authorized to do business within the State is not open to the plaintiff in error." (Citing cases.) (277 U. S. 163, 167; 48 S. Ct. 503.)

In *People* v. *Sanger* (*supra*) the appellant had been convicted in a Court of Special Sessions of a violation of section 1142 of the Penal Law, making it a misdemeanor to sell, advertise or give information for the prevention of conception. It was contended that the law was broad enough to prevent a duly licensed physician from giving advice in a proper case; that, consequently, it was an unreasonable police regulation and, therefore, unconstitutional. The Court of Appeals held that the defendant, not being a physician, could not plead the unconstitutionality, because she was not a person affected thereby.

In *People ex rel. Durham R. Corp.* v. *La Fetra* (*supra*) the emergency rent laws, so called, were under consideration. The relator sought to raise questions of constitutionality as to the operation of the law on other classes of individuals. The court held " that it has no standing to raise questions which do not directly affect it. (*Arizona Employers' Liability Cases*, 250 U. S. 400, 409.)"

It is contended that because of the issuance and possession by plaintiff of a weighmaster's license a statute affecting his business in exercising the privileges conferred by the license entitle him to maintain this action. The grant by the State of authority to exercise a privilege or conduct a business regulated by law, does not confer a vested interest which the State may not by subsequent

legislative enactment affect or destroy. Many illustrations of this principle might be given. It has, for instance, been held that a motor vehicle operator does not exercise a right though licensed, but rather a privilege which may be denied or curtailed, and the Legislature may prescribe on what conditions the privilege shall be exercised. (*People* v. *Rosenheimer*, 209 N. Y. 115, 121; *People ex rel. Price* v. *Sheffield Farms Co.*, 225 id. 25, 33; *Town of Waterford* v. *Brockett Lumber Co., Inc.*, 227 App. Div. 422, 424; *People* v. *Stryker*, 124 Misc. 1.)

The rule has been applied in reference to the licensing of public dance halls (*People ex rel. Ritter* v. *Wallace*, 160 App. Div. 787); also as to granting the privilege of selling intoxicating liquors. (*Matter of Yates* v. *Mulrooney*, 245 App. Div. 146, and cases cited.)

It is within the power of a municipality by ordinance to impose reasonable restrictions and regulations upon the manner of removing garbage. In the city of Rochester an ordinance was adopted regulating the public gathering of garbage, and providing for the letting of contracts therefor. By the provisions of the ordinance all permits theretofore issued for the removal of garbage were canceled. The defendant, who had held a permit, continued to remove garbage. The city of Rochester brought an action to enjoin the defendant from violating the ordinance. It was held that the exclusive right created under the ordinance was not open to the objection that it was a monopoly, nor invalid because it granted an exclusive privilege or franchise. The right to cancel the permits granting the privilege was sustained. (*City of Rochester* v. *Gutberlett*, 211 N. Y. 309.)

In such instance the licensee takes his license subject to such conditions as the Legislature may see fit to impose. In the present instance the State, acting through the legislative branch of the government, has specified that an article of common and necessary use shall be sold by weight under conditions specified. It has provided for granting to qualified individuals the privilege of acting under license from the State as officials or licensees vested with power and authority to weigh coal and coke. The privilege so granted clearly cannot be held to be a vested right, nor do we believe it can be termed property. The licensee takes his license and accepts his privilege subject to the right of the State to step in at any time and impose conditions, or by statutory enactment change its requirements. By the issuance of a license the State did not enter into a contract to refrain from altering the statutes of the State so that plaintiff would not be affected indirectly thereby. The Legislature might have revoked entirely weighmasters' licenses such as the one

held by plaintiff. It might have provided that only individuals passing a civil service examination or complying with certain additional requirements and conditions should have the privilege of acting as licensed weighmasters. If the State may revoke the privilege in its entirety, it clearly is not precluded from the enactment of laws which by reason of their provisions may indirectly affect the value of his license to the plaintiff.

It is, therefore, our conclusion that the plaintiff is not so situated or so affected by the provisions of section 197-g of article 16-A of the Agriculture and Markets Law as to be entitled to attack the constitutionality of such section, and consequently the complaint fails to state facts sufficient to constitute a cause of action.

We have been asked in the determination of this motion to pass upon the constitutionality of the statute. All of the parties desire, and it is important, that the constitutionality of section 197-g should be determined, when such serious doubt as to constitutionality surrounds its provisions. It is often said by the courts that they will withhold and defer decision on constitutionality of statutes until such decision becomes unavoidable in the determination of a matter before them. In this instance, though the court might prefer to determine the real and important questions raised, it cannot abstractly determine the constitutionality of the statute. If the party who seeks to attack the statute as unconstitutional has no standing in court to maintain his alleged cause of action, the court is not justified in passing upon the questions of constitutionality sought to be raised.

The motion to dismiss the complaint is granted, with ten dollars costs of motion, upon the sole ground that the complaint fails to state a cause of action, in that the plaintiff is not directly affected by the provisions of section 197-g of article 16-A of the Agriculture and Markets Law, and consequently is not a party who can raise the question of constitutionality under either the Federal or State Constitutions.

Submit order accordingly.