AL WALKER, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BOROUGH OF STANHOPE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 1, 1956—Decided October 24, 1956.

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. Milford Salny* argued the cause for the appellant.

*Mr. Bertram M. Berla* argued the cause for the respondent (*Mr. Oscar Meyerson,* attorney).

The opinion of the court was delivered by

FRANCIS, J. A. D.   The Borough of Stanhope adopted an ordinance providing for the licensing and regulation of trailer camps.   Plaintiff Al Walker, Inc., a retail seller of trailer homes, attacked the validity thereof in a prerogative writ proceeding.   The company is not a resident or taxpayer of the municipality; it neither owns nor rents any property intended to be put to trailer camp use; no application for a license to operate such a camp has been made or refused; its place of business is located elsewhere, in a neighboring township, Roxbury.   The ordinance makes no attempt to regulate the manufacture or sale of trailers.

The standing of the plaintiff to maintain the action was questioned and by agreement that matter was taken up first by the trial court.   After a hearing limited to proof on the subject, judgment was entered for the defendant. Hence this appeal.

The ordinance defines a trailer camp as a "tract of land designed, maintained or intended for the purpose of supplying a location or accommodation for a trailer but shall not include lots on which unoccupied trailers may be parked for the purpose of sale."   And it provides that "it shall be unlawful for any person to maintain or operate within the limits of the Borough of Stanhope, any trailer camp for hire or without charge unless such person shall first obtain a license therefor."   An annual fee is assessed for the license and a daily service and inspection fee must be paid also.   The size of the camp tract is fixed and regulations are established for water and sewage connections, for laundry, toilet facilities, for garbage disposal and for use of electricity.

For nine years plaintiff has been a retail dealer in house-trailers in Roxbury Township.   It operates a sales lot at the Ledgewood Traffic Circle four miles from defendant

borough, and is the only sales agent within a radius of 20 miles in every direction from that location.

Testimony adduced showed that when the Walker company commenced operations, of 14 municipalities lying within an 18-mile radius, only one had an ordinance governing the occupancy of trailers within its borders. At the time of the hearing all of them had adopted such measures. According to plaintiff's witness, some of these ordinances prohibit the parking of the mobile homes for occupancy purposes; others simply regulate the practice. As a result, according to plaintiff, the cost of doing business has increased because it has become necessary to solicit and advertise outside the normal trading area, sales and consequent profit have decreased, and in the past two years only 15% of its sales were transacted within the 18-mile radius spoken of above. With particular respect to Stanhope, the claim was made that although 15 prospective customers called at its place of business during the two years prior to June 1955, not one resident of the borough came in after the passage of the ordinance and down to the date of the hearing. In addition, some rather ambiguous testimony was introduced to the effect that after the ordinance two trailers which had been sold for use there were repurchased. The buyers were not identified nor produced, and the relation between the reacquisition and the ordinance is not at all clear.

The trial court recognized that the regulatory measures of the various municipalities affecting the use of trailers in plaintiff's potential sales area might visit indirect economic loss on the plaintiff but declared that under the existing law of this state no legally protectible interest had been shown.

■ The applicable rule has been settled for some time. Under it a person may attack the validity *in toto* of an ordinance if he "has sustained, or is in immediate danger of sustaining, some direct and certain injury as the result of [its] enforcement * * *." *Koons v. Board of Com'rs of Atlantic City,* 134 *N. J. L.* 329, 338 (*Sup. Ct.* 1946), affirmed *o. b.* 135 *N. J. L.* 204 (*E. & A.* 1947); *Musicians' Protective Union, Local* 526, *American Federation of Musi-*

*cians v. Jersey City*, 4 *N. J. Super.* 147 (*App. Div.* 1949); *Gurland v. Town of Kearney*, 128 *N. J. L.* 22 (*Sup. Ct.* 1942); *O'Mealia Outdoor Advertising Co. v. Mayor and Council of Borough of Rutherford*, 128 *N. J. L.* 587, 591 (*Sup. Ct.* 1942); *Rosencrans v. Eatontown Tp.*, 80 *N. J. L.* 227 (*Sup. Ct.* 1910).

Examples of direct injury which will give standing to question the validity of a municipal enactment in its entirety are: imposition of a sales tax on residents of a city (*Koons v. Board of Com'rs of Atlantic City, supra*); prohibition of use of outdoor advertising billboards maintained within the city on properties leased or owned by an advertising agency to publicize the wares of others (*O'Mealia Outdoor Advertising Co. v. Mayor and Council of Borough of Rutherford, supra; Rosencrans v. Eatontown, supra*).

On the other hand, a musicians' union was held to have no status which would permit an attack on an ordinance of Jersey City prohibiting food and drink establishments from allowing musicians to play therein without a special license. The fact that some of its members resided in the city did not affect the ruling. And it was said also that resident members who joined as plaintiffs, were in no better position in the absence of proof that the ordinance had interfered or will interfere with their right to work. *Musicians' Protective Union, Local 526, American Federation of Musicians v. Jersey City, supra.* See also: *New Jersey Bankers Ass'n v. Van Riper*, 1 *N. J.* 193 (1948), and contrast, *Hudson, Bergen, etc., Ass'n v. Board of Com'rs of City of Hoboken*, 135 *N. J. L.* 502 (*E. & A.* 1947).

Outside New Jersey it has been adjudged that a manufacturer and seller of paper milk containers, the use of which in the distribution of milk was banned by ordinance, was only indirectly and remotely interested, and lacked standing to seek a declaratory judgment as to the validity thereof since it was not engaged in the distribution of milk. *Ex-Cell-O Corp. v. City of Chicago*, 115 *F. 2d* 627 (7 *Cir.* 1940). Here the court said:

"\* \* \* Defendant is free to manufacture and to sell such bottles wherever it may desire, even in Chicago. Obviously, few, if any persons will purchase them for use there, but that result we deem incidental, consequential and indirect. Were the plaintiff forbidden to manufacture and sell paper milk bottles in Chicago, the effect upon its business would be direct and inevitable.

Thus it is apparent that inevitable financial pecuniary damage is not the test of the sufficiency of plaintiff's interest. Otherwise the right to sue might be extended indefinitely to parties far removed, such as workmen in plaintiff's factories whose wages are reduced or lost because of lack of realization of profits by their employer. \* \* \*."

A manufacturer of certain types of vehicles which were banned by statute from the highways of Texas and so were not saleable there, was not permitted to maintain an injunction suit against the enforcement of the ban, even though business was lost because of the inability to make sales and to collect on those made. The injury was classed as remote and not direct, *Sproles v. Binford,* 52 *F. 2d* 730 (*D. C. S. D. Tex.* 1931). A beauty college was not allowed to attack a legislative enactment imposing upon applicants for beauty culture licenses certain educational requirements which curtailed its enrollment. The court said:

"Section 3(a), *supra,* is directed essentially to students, who desire to qualify so as to secure a license to act as a hairdresser and to engage in the practice of beauty culture, rather than to beauty schools or colleges as such. No showing has been made of any direct or substantial injury threatened or suffered by appellant so as to present a justiciable issue. In our opinion its interest is too remote to entitle it to invoke the declaratory judgments act." *Washington Beauty College, Inc. v. Huse,* 195 *Wash.* 160, 80 *P. 2d* 403, 405 (1938).

A user of motor vehicle fuel cannot question the validity of a tax imposed upon dealers in the fuel even though the statute contemplates that the levy be passed on to the purchaser and it is in fact included in the price paid by him to the dealer, *King v. Baker,* 69 *N. D.* 581, 288 *N. W.* 565, 125 *A. L. R.* 730 (*Sup. Ct.* 1939); *Central Transfer Co. v. Commercial Oil Co.,* 45 *F. 2d* 400 (*D. C. E. D. Mo.* 1930); *Williams v. Riley,* 280 *U. S.* 78, 50 *S. Ct.* 63, 74

*L. Ed.* 175 (1929). And an association which placed coin operated musical instruments in restaurants, lunchrooms, cafes, *etc.,* under contract with the proprietors for a share of the profits, had no sufficient interest to entitle it to maintain an injunction suit against the city to enjoin the enforcement of an ordinance requiring the payment of an annual license fee of $250 by dancing academies and halls, *Georgia Music Operators Ass'n v. City of Atlanta,* 183 *Ga.* 794, 190 *S. E.* 32 (1937).

Two New York cases at the trial level are pertinent. In *Connelly v. Department of Agriculture & Markets,* 162 *Misc.* 73, 293 *N. Y. S.* 711, 717 (*Sup. Ct.* 1937), a statute required drivers of trucks carrying anthracite coal into the state, on crossing the state line, to proceed to the nearest weighmaster's scales and have the coal weighed. A licensed weighmaster was deemed not qualified to attack the regulation, although it resulted detrimentally to his business by requiring the drivers to have the coal weighed at scales nearer the state line. The court agreed that the act was of doubtful validity but said of the plaintiff:

"* * * He has sustained a loss of patronage, not because he has been deprived of any right vested in him, not because he has been restricted in the exercise of the privileges his license as weighmaster entitles him to enjoy, but because of the enactment of a requirement resting upon individuals engaged in a business with which he is not directly connected or concerned."

The second, somewhat more recent, *Gold Sound, Inc., v. City of New York,* 195 *Misc.* 291, 89 *N. Y. S. 2d* 860 (*Sup. Ct.* 1949), involved an ordinance regulating the use of amplified sound upon and adjacent to public streets, parks and other places. The plaintiff manufactured and sold sound equipment to purchasers for resale to others for commercial and non-commercial use in the city. Such equipment was sold also to persons in the business of leasing it for commercial and non-commercial use there. The complaint alleged that by reason of threats to purchasers of the equipment that the ordinance would be enforced, plaintiff's business had been drastically curtailed. The court declared:

"The law complained of restricts the use and operation of such equipment but does not forbid or restrict its manufacture and sale. Inevitable pecuniary damage is not the test of the sufficiency of plaintiffs' interest. Rather the whole question is whether the damage claimed springs directly to plaintiff from the defendants. If it is incidental, if it is indirect, the court's jurisdiction may be invoked." (89 *N. Y. S.* 2*d*, at *page* 866)

See also: *Menges v. Bernards Tp.*, 4 *N. J.* 556 (1950); *Faherty v. Township Committee of Bernards Township,* 123 *N. J. L.* 551 (*Sup. Ct.* 1940); *Schenley Distillers Corp. v. United States,* 326 *U. S.* 432, 66 *S. Ct.* 247, 90 *L. Ed.* 181 (1946); *Edward Hines Yellow Pine Trustees v. United States,* 263 *U. S.* 143, 144, 44 *S. Ct.* 72, 68 *L. Ed.* 216 (1923); *Davis & Farnum Mfg. Co. v. City of Los Angeles,* 189 *U. S.* 207, 23 *S. Ct.* 498, 47 *L. Ed.* 778 (1903); and contrast, *Columbia Broadcasting System, Inc. v. United States,* 316 *U. S.* 407, 62 *S. Ct.* 1194, 86 *L. Ed.* 1563 (1942); *Truax v. Raich,* 239 *U. S.* 33, 36 *S. Ct.* 7, 60 *L. Ed.* 131 (1915), where standing was recognized; and note Justice Frankfurter's concurring opinion in *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 *U. S.* 123, 71 *S. Ct.* 624, 95 *L. Ed.* 817 (1951).

The ordinance in question, which applies indiscriminately to residents and non-residents of the borough, undertakes to license and regulate trailer camps and to prohibit parking of trailers for residence purposes except in a licensed camp or enclosed building. It does not operate as a direct regulation of plaintiff's business. No resident or non-resident owner of or person having a sufficient interest in land in the borough, who is desirous of operating such a camp there, is concerned in this proceeding. Loss of business accruing to plaintiff because no one wishes to establish a trailer camp in the borough, or possibly because no one has enough land available to make the operation profitable, or because the stringent regulations deter possible buyers, is indirect and incidental. It is not of the immediate character which cloaks the plaintiff with standing to challenge the ordinance.

For want of a justiciable controversy, the judgment is affirmed.