HERBERT GIMBEL, PROSECUTOR, v. ROBERT V. PEABODY, CLERK OF THE TOWNSHIP OF PENNSAUKEN, ET AL., RESPONDENTS.

Argued January 17, 1935—Decided April 8, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the prosecutor, *Merritt Lane* and *Runyon Colie.*

For the respondents, *Thomas F. Salter* and *Carl Kisselman.*

BODINE, J. The writ of *certiorari* brings before the court certain proceedings had by the township of Pennsauken, Central Airport Sporting Club and Pennsauken Kennel Club providing for the operation of a greyhound racing track in the township of Pennsauken, Camden county, New Jersey, under and by virtue of chapter 56 of the laws of 1934 (*N. J. Stat. Serv.* 1934, § *136-46001(95) purporting to authorize dog racing in this state under the pari-mutuel system, and chapter 179, page 432, providing for a means to regulate the same, and the several leases and resolutions adopted pursuant thereto. The acts recite perhaps as a justification the existence of a financial emergency.

"In 1897, the constitution of the state was amended by the following provisions, article IV, section VII, subdivision 2 (1 *Comp. Stat., p. lxix*) : 'No lottery shall be authorized by the legislature or otherwise in this state, and no ticket in any lottery shall be bought or sold within this state, nor shall pool-selling, bookmaking or gambling of any kind be authorized or allowed within this state, nor shall any gambling devise, practice or game of chance now prohibited by law be legalized, or the remedy, penalty, or punishment now provided therefor be in any way diminished.' The purpose

of the amendment was to forever bar gambling from the state. Sections 57, 58 and 59 of the Crimes act (*Pamph. L.* 1898, p. 810; 2 *Comp. Stat., p.* 1764), treat as high misdemeanors offenses connected with a lottery or lottery policy game. Like provisions of the law were in existence when the constitutional amendment was adopted. Gaming, betting generally, horse racing for money and so on are mere misdemeanors. See sections 60 to 64, inclusive, of the Crimes act. Bookmaking or pool-selling is more severely dealt with by section 65." *Dombrowski* v. *State,* 111 *N. J. L.* 547.

Notwithstanding the clear and explicit mandate of the constitution, the fundamental law of this state, there was enacted chapters 56 and 179 of the laws of 1934.

Pennsauken township had leased certain lands from the Central Airport, Incorporated, which controlled an airport and land adjacent. The township on April 3d, 1934, by virtue of a resolution, made a lease of the lands, which it so acquired, to the Central Airport Sporting Club. The resolution recites that the purpose of the lease was that racing under the pari-mutuel system might be carried on in order that revenue might be obtained. Such has been the result of the venture. Prosecutor assails, as unconstitutional, chapters 56 (*N. J. Stat. Serv.* 1934, § *136-46001(95) and 179 (*N. J. Stat. Serv.* 1934, § 7-212) of the laws of 1934 and the steps taken thereunder for the operation of a dog racing track with pari-mutuel betting.

Since the legislation, under which the acts complained of were taken, is so obviously prohibited by the constitution of this state, it seems useless to consider other constitutional objections, such as the inapplicability of the enactments to a township and the elusiveness of the titles to the acts complained of.

Although emergency legislation has been sustained by the Supreme Court of the United States where it merely postponed the enforcement of individual rights, we do not think the doctrine has any applicability to a situation where there is proposed a suspension of the criminal laws of this state, especially when the constitution has specifically provided that

those laws in so far as they apply to pool-selling, bookmaking and gambling may not be changed or altered. An emergency may give rise to the necessity of preventing a citizen from taking an undue advantage of his fellowman, but it can never be said to justify a gambling enterprise so that municipalities may obtain revenue "to the great prejudice of some families and the hindrance of trade and industry and the corruption of the morals of the youth." Act of December 12th, 1761, page 12.

The prosecutor has the standing of a citizen and taxpayer. *Stroud* v. *Consumers Water Co.*, 56 *N. J. L.* 422. Besides measures to test the legality of proceedings in direct violation of the fundamental law of the state should be liberally granted.

The argument that the prosecutor is in laches because large expenditures have been made is without merit. Those who can read can understand the constitutional provisions of this state, and if they choose to expend their money in defiance of the clear mandate of the people, they must take the consequences. Time may not inure to the advantage of those who choose to flout the constitution of the state.

The proceedings brought up for review are set aside, with costs.