AMERICAN CAN COMPANY OF MASSACHUSETTS *vs.* MILK CONTROL BOARD.

Suffolk.   November 10, 1942. — January 28, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Milk.   Words,* "Person aggrieved."

A person engaged in the business of supplying paper milk containers and the machines to make them is a "person aggrieved by," and so under § 21 of G. L. (Ter. Ed.) c. 94A, inserted by St. 1941, c. 691, § 2, entitled to a review of an order of the milk control board requiring that one cent be added to the price of any milk or cream sold by a dealer or a store in a paper container, and thus making it impossible for such person to do business in a valuable market.

PETITION FOR REVIEW, filed in the Superior Court on June 12, 1942.

A demurrer was sustained by *Williams,* J., and the petition was dismissed by decree entered by order of *Swift,* J. The petitioner appealed.

*J. B. Ely,* (*R. Ely* with him,) for the petitioner.

*W. F. Hayes,* Assistant Attorney General, for the respondents.

*D. Greer,* by leave of court, submitted a brief as amicus curiae.

QUA, J.   This is a petition to the Superior Court under § 21 of G. L. (Ter. Ed.) c. 94A, inserted by St. 1941, c. 691,

§ 2, for review of the proceedings of the milk control board on which was based an order of the board providing in part that where milk or cream is sold in single service paper containers by milk dealers or by stores, "a non-refundable minimum container charge of one cent per container shall be made over and above the applicable minimum whole-sale and retail prices" set forth in the order. The Superior Court sustained a demurrer to the petition and dismissed the petition.

The material allegations of the petition are in substance these: The petitioner owns machinery and equipment used for the sole purpose of packaging milk and milk products in paper containers and is engaged in the business of leasing or selling such machines and containers and has invested large sums of money in said business. The order of the board hereinbefore described deprives the petitioner of a substantial and valuable market for its machinery, equipment, and paper containers and makes it impossible for the petitioner to do business with milk producers and dealers in the Greater Boston market. The petitioner filed its objections "in due course" with the board. It is further alleged that the board's "Reservation and Findings of Fact" show that, without authority, and in order to prevent "the lapse" of previous orders, the board made the order in question before completing its review of the evidence received at the hearings held by it pursuant to § 12; that the transcript of the proceedings before the board, including the evidence, reveals no fact or facts in support of the portion of the order complained of; that its provisions do not affect the public welfare, health, morals or safety and "are not fair, just and reasonable and are a totally unwarranted and illegal discrimination against the use of paper containers as a standard package for milk and milk products" and are unconstitutional.

The substantial ground of demurrer is that "It does not appear that the petitioner is a person aggrieved within the meaning of" § 21. Other grounds stated, in so far as they are different from this, have not been argued and we think are without merit. The question now before us is whether

a person engaged in the business of supplying paper milk containers and the machines to make them is a person "aggrieved by," and so entitled to a review of, an order of the board adding one cent to the price of any milk or cream sold by a dealer or a store in a paper container, and thus, as alleged, making it impossible for the petitioner to do business in a valuable market.

In order to reach a true conclusion as to the classes of persons to whom the right of review is granted by § 21 it becomes necessary to look at other sections defining the powers and duties of the board and the manner of their exercise. Under § 2 the board has power and duty to establish marketing areas; "to supervise and regulate the milk industry of the commonwealth, including the production, purchase, receipt, sale, payment and distribution of milk," and the control of unreasonable and burdensome surpluses; to apportion equitably among producers the total value of milk purchased by dealers: to encourage the production of a regular, continuous and adequate supply of fresh milk; to promote programs designed to increase its consumption; to investigate and regulate for the purposes of the law "all matters pertaining to markets, to the production, manufacture, processing, storage, transportation, disposal, distribution and sale of milk . . . and to the establishment and maintenance of reasonable trade practices relative to milk." "The board may, after examination and investigation, and after hearing held after due notice, adopt all orders, rules and regulations, not inconsistent with law, which it deems necessary or desirable to administer or effectuate any of the purposes of this chapter." By §§ 4, 5, and 6, the board is given power to license milk dealers and to refuse, suspend or revoke licenses. By §§ 10, 11 and 12 the board is given power, after investigation and hearing, to fix minimum prices. These are extraordinary powers. It is not too much to say that when originally granted by St. 1934, c. 376, they were without precedent in this Commonwealth as applied to a kind of business not classed with public utilities. Their exercise was bound to affect profoundly many persons not directly concerned in the production and distribution of

milk and many persons not directly commanded by the board to perform or to refrain from any designated acts. Such powers were capable of grave abuse.

Keeping in mind this brief summary of some of the powers of the board, we turn to some of the provisions of the law regulating the manner of their exercise. By § 16 provision is made for "general" orders, rules, and regulations and for "special" orders, rules and regulations "applying only to one or more persons named therein." "Before adopting, altering, or rescinding any general order, rule or regulation, the board shall hold a general hearing upon the subject matter thereof, and afford all persons interested an opportunity to offer evidence pertinent thereto." § 16 (b). Before adopting a special order, rule or regulation "the board shall hold a special hearing" affording an opportunity to be heard to the person or persons to whom the special order, rule or regulation applies. § 16 (c). There are elaborate provisions for public notice of any "general hearing" and of any "general order, rule or regulation" adopted by the board. §§ 17 (a), (b), 19 (a). And by § 19 (b) it is provided that a general order duly adopted, posted and published "shall, upon being filed with the State secretary as required by section thirty-seven of chapter thirty, have the force and effect of law." These provisions show a clear recognition by the Legislature that the making of "general" orders by this board may vitally affect many members of the public of different classes, and the provisions for general notice and hearing show the solicitude of the Legislature that "all persons interested" shall have the opportunity to "offer evidence pertinent" to any proposed general order.

After the provisions to which reference has been made comes § 21 granting to "Any person aggrieved by any order, rule or regulation adopted by, or other decision of, the board" a right of "review by the superior court of the proceedings of the board on which such order, rule, regulation or decision was based." This review relates to matters of law only, since the board's findings of facts are conclusive, "if supported by evidence," and "No objection not urged before the board shall be considered in review."

The right of review is granted in general terms to "any person aggrieved." Having in mind the general structure of the statute, the distinction between "general" and "special" orders, the far reaching effect of possible general orders made under its authority, the provisions for general public notice of general hearings, the right of "all persons interested" to take part in those hearings, and the broad terms in which the right of review itself is granted, we think that the right to a review of the legality of a general order is extended to all persons having a right to take part in the general hearing which preceded the order, that is, to "all persons interested," and that any person "interested" may become a person "aggrieved." Furthermore, we think that a person "interested" and a person "aggrieved" need not be within the class of persons who are directly commanded by the order of the board either to act or to refrain from acting, nor need he be engaged in any branch of the milk business. We recognize that difficult questions may arise as to who is a person "interested" and therefore potentially a person "aggrieved." We do not attempt to solve all of them now. Doubtless not every person whose interests may be in some remote way injuriously affected by a general order of the board is a person "interested" or a person "aggrieved," but in our opinion a person who is engaged in the business of supplying articles used solely in the packaging of milk, as the petitioner says it is, and who has been deprived, as the petitioner says it has been, of a valuable market by a general order of the board is a person "interested" and a person "aggrieved" within the meaning of the statute, and has the right to have the Superior Court pass upon the legality of the order of the board. Such a person has suffered an ascertainable property loss as a proximate consequence of the board's action. If a private individual had wrongfully interfered with the business of such a person to the same extent and with the same result, that person could have recovered damages in an action. To say that he was not in truth "interested" and "aggrieved," if the order is illegal, would be unrealistic and would place theory above fact.

In deciding this question of statutory construction we have derived little assistance from decisions in ordinary litigation as to who is aggrieved, and close statutory analogies seem lacking. It has been said that in probate cases the party appealing must have "some pecuniary interest, or some personal right, which is immediately or remotely affected or concluded by the decree appealed from," *Lawless* v. *Reagan*, 128 Mass. 592, 593, or "some pecuniary interest, some personal right, or some public or official duty resting upon him, affected by the decree." *Monroe* v. *Cooper*, 235 Mass. 33, 34. *Murray* v. *Massachusetts Bonding & Ins. Co.* 283 Mass. 15, 16. See *Pierce* v. *Gould*, 143 Mass. 234, 235; *Delaney* v. *Cook*, 256 Mass. 203, 204. In so far as these definitions are capable of translation from the field of litigation to fit the case of a general order of a board, it would seem that the petitioner falls within them. In *Ayer* v. *Commissioners on Height of Buildings*, 242 Mass. 30, at page 33, it was said that "The scope and meaning of the words 'person who is aggrieved' must be determined with reference to the context and the subject matter." It was there held that owners of neighboring lands the values of which might be affected by an order increasing the permissible height of building on other lands were persons aggrieved entitled to appeal. The words "any person aggrieved" in connection with zoning laws have been said to have a "comprehensive" meaning, *Godfrey* v. *Building Commissioner of Boston*, 263 Mass. 589, 591, and a landowner a thousand feet away may be "a person aggrieved" by the issuance of a license and permit to store petroleum products. *Standard Oil Co. of New York* v. *Commissioner of Public Safety*, 274 Mass. 155. A person entitled to petition for an abatement of taxes as "a person aggrieved" is "one whose pecuniary interests are or may be adversely affected." *Hough* v. *North Adams*, 196 Mass. 290, 291.

The respondents rely strongly upon *Ex-Cell-O Corp.* v. *Chicago*, 115 Fed. (2d) 627, where the plaintiffs, manufacturers respectively of machines for making paper containers and of the containers themselves, sought a declaratory decree that an ordinance of the city did not prohibit the use of

paper milk containers or that, if it did, it was invalid, and the court held that the plaintiffs were without interest to maintain the suit. Whatever view we might take in a case like that, we cannot agree that the test of interest or grievance in a suit to have an ordinance declared invalid or to enjoin the enforcement of a statute as unconstitutional is decisive of the construction to be placed upon language which expressly confers a right of review in a statute like our milk control law. In a case of the former type it was said that "The party who invokes the power must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Massachusetts* v. *Mellon*, 262 U. S. 447, at page 488. It would seem that the present petitioner could fairly pass this test. In *Truax* v. *Raich*, 239 U. S. 33, an alien employee in danger of losing his job as the result of a statute requiring employers to hire a large percentage of citizens was allowed to enjoin enforcement of the statute. The court said it was "idle to call the injury indirect or remote." Page 39. In *Pierce* v. *Society of Sisters*, 268 U. S. 510, it was held that proprietors of schools had a "clear and immediate" interest to enjoin enforcement of an unconstitutional statute that would interfere with their patronage to the destruction of their business and property. Page 536. *Buchanan* v. *Warley*, 245 U. S. 60. *Western Pacific California Railroad* v. *Southern Pacific Co.* 284 U. S. 47, 51, 52. *Alabama Power Co.* v. *Ickes*, 302 U. S. 464, 479. *Columbia Broadcasting System, Inc.* v. *United States*, 316 U. S. 407, 422, 423.

There is nothing at variance with this decision in *Milk Control Board* v. *Gosselin's Dairy, Inc.* 301 Mass. 174.

The decrees are reversed, and an interlocutory decree is to be entered overruling the demurrer.

*Ordered accordingly.*