23 N.J. 657 (1957)
130 A.2d 372
AL WALKER, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
BOROUGH OF STANHOPE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued March 4, 1957.
Decided March 25, 1957.
*658 Mr. Milford Salny argued the cause for the appellant.
Mr. Bertram M. Berla argued the cause for the respondent (Mr. Oscar Meyerson, attorney).
The opinion of the court was delivered by JACOBS, J.
The Appellate Division affirmed the trial court's judgment of dismissal on the ground that the plaintiff had no standing to maintain the action. See 42 N.J. Super. 182 (1956). Thereafter the plaintiff appealed asserting a constitutional question under R.R. 1:2-1(a). The defendant has not urged that the plaintiff should have sought certification under R.R. 1:10-2 and we shall assume that the plaintiff's appeal as of right is properly before us.
The plaintiff is a retail seller of trailer homes. Its sales lot is in Roxbury Township, about four miles from the defendant Borough of Stanhope. There are no other retail sellers of trailer homes in the vicinity. When the plaintiff first began business about nine years ago only one of the 14 communities within an 18-mile radius had any ordinance restrictions governing house-trailers. Now all of them have such restrictions; some have the effect of wholly prohibiting the parking of mobile homes for occupancy purposes whereas others have the effect of imposing regulations on their use. The plaintiff's cost of operation has significantly increased because it has been obliged to seek its business at distant places; it formerly did 85% of its business within a radius *659 of 18 miles but now it only does 15% of its business in that area. Before the Borough of Stanhope adopted its house-trailer ordinance the plaintiff had sold trailers to some residents of the Borough and had received inquiries from other residents; since the ordinance was adopted the plaintiff has made no such sales and received no such inquiries; indeed in two instances the plaintiff felt obliged to reacquire two trailers from residents who could no longer use them in the Borough.
The Borough of Stanhope's ordinance was originally adopted on June 28, 1955. It excluded trailer camps and prohibited the occupancy of any individual trailer as a place of residence for a period exceeding four weeks. Upon the plaintiff's filing of its complaint to set aside the ordinance the Borough repealed it and on September 26, 1955 adopted a new ordinance which now prohibits the occupancy of any trailer as a place of residence except "in an enclosed building or a licensed trailer camp" and sets forth detailed provisions for the licensing and regulation of trailer camps; the annual license fee for a trailer camp is fixed at $200 and an inspection fee of $1 per day per trailer is also imposed. Thereafter the plaintiff amended its complaint, alleging that the ordinance of September 26, 1955 "specifically and by necessary implication forbids and prohibits the parking of mobile homes for use as dwellings and places of human habitation within the limits of the defendant Borough, on lots individually established as sites for such dwellings" and prohibits all persons from conducting trailer camps or parks within the Borough by (a) "the imposition of unreasonable rules and regulations," (b) "the imposition of fees and charges unreasonably high and confiscatory in amount," and (c) "requiring that the sanitary facilities in any trailer shall be sealed by the licensee during the time when it is located at any camp site." Cf. Bellington v. East Windsor Tp., 17 N.J. 558 (1955); Edwards v. Mayor, etc., of Borough of Moonachie, 3 N.J. 17 (1949).
In its answer to the plaintiff's complaint the Borough set forth, as a separate defense, that the plaintiff was not a *660 proper party to maintain the action; testimony on that preliminary issue was taken before Assignment Judge Hall. At the conclusion of the plaintiff's testimony the Borough's motion to dismiss was granted. Judge Hall indicated that the testimony could properly be viewed as establishing that the plaintiff had lost income as a result of the ordinance and that its loss was actual rather than prospective or speculative; but he doubted that it was "direct" within the meaning of the earlier cases which he intimated might justly be broadened in current application. In the Appellate Division Judge Francis likewise entertained the view that the plaintiff's loss was not sufficiently direct within Koons v. Board of Com'rs of Atlantic City, 134 N.J.L. 329 (Sup. Ct. 1946), affirmed 135 N.J.L. 204 (E. & A. 1947); Musicians' Protective Union, Local 526, etc. v. Jersey City, 4 N.J. Super. 147 (App. Div. 1949); Gurland v. Town of Kearny, 128 N.J.L. 22 (Sup. Ct. 1942); O'Mealia Outdoor Advertising Co. v. Mayor and Council of Borough of Rutherford, 128 N.J.L. 587 (Sup. Ct. 1942); Rosencrans v. Eatontown Tp., 80 N.J.L. 227 (Sup. Ct. 1910). Cf. Appley v. Bernards Tp., 128 N.J.L. 195 (Sup. Ct. 1942), affirmed 129 N.J.L. 73 (E. & A. 1942); Tallon v. City of Hoboken, 60 N.J.L. 212 (E. & A. 1897); Hamblet v. City of Asbury Park, 61 N.J.L. 502 (Sup. Ct. 1898). But cf. Morgan v. Orange, 50 N.J.L. 389 (Sup. Ct. 1888); Thompson v. Ocean Grove, 55 N.J.L. 507 (Sup. Ct. 1893).
Unlike the Federal Constitution, there is no express language in our State Constitution which may be said to confine the exercise of our judicial power to actual cases and controversies. See U.S. Const., Art. III, Sec. II; N.J. Const., Art. VI, Sec. I. Nevertheless, it is clear that we will not render advisory opinions or function in the abstract (New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 240 (1949)) or entertain proceedings by plaintiffs who do not have sufficient legal standing to maintain their actions. See New Jersey Bankers Ass'n v. Van Riper, 1 N.J. 193 (1948). Cf. Greenspan v. Division of Alcoholic Beverage Control, 12 N.J. 456, 459 (1953); Frankfurter, J., in *661 Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 149, 71 S.Ct. 624, 95 L.Ed. 817, 842 (1951). In passing upon a plaintiff's standing the court is properly required to balance conflicting considerations and weigh questions of remoteness and degree. In Koons v. Board of Com'rs of Atlantic City, supra, a prerogative writ attack was made on a statute which authorized certain cities along the Atlantic Ocean to adopt ordinances imposing sales taxes. The plaintiff was a resident of Atlantic City, which had adopted a sales tax ordinance, but she owned no real property and paid no personal property or mercantile tax. The court found that the statute was unconstitutional and that the plaintiff had a sufficient standing to have the ordinance set aside; in the language of Justice Heher, the determinative question was whether she had sustained or was "in immediate danger of sustaining, some direct and certain injury as the result of the enforcement of the statute." Though her actual financial interest was no greater than that of all others who would have been obliged to pay the sales tax, she was not simply an interloper and her proceeding effectively served the public interest in striking down an unconstitutional statute.
In our State, perhaps more than any other, the prerogative writ has been broadly made available as a comprehensive safeguard against wrongful official action. Garrou v. Teaneck Tryon Co., 11 N.J. 294, 302 (1953). In Gimbel v. Peabody, 114 N.J.L. 574, 577 (Sup. Ct. 1935) the plaintiff obtained a writ of certiorari to review proceedings by the Township of Pennsauken and others for the operation of a greyhound racing track in the township. The court set aside the proceedings as violative of the anti-gambling provisions of the Constitution; with respect to the plaintiff's capacity to sue, it remarked that he had the standing of a citizen and taxpayer and that measures "to test the legality of proceedings in direct violation of the fundamental law of the state should be liberally granted." In Doremus v. Board of Education of Borough of Hawthorne, 5 N.J. 435 (1950), the court entertained a proceeding to review the constitutionality of *662 a statutory provision requiring Bible readings in the public schools, though one of the plaintiffs asserted an interest solely as a citizen taxpayer and the other plaintiff taxpayer asserted an additional interest solely as the parent of a school child. But compare the United States Supreme Court's dismissal of the appeal in Doremus v. Board of Education of Borough of Hawthorne, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). In Greenspan v. Division of Alcoholic Beverage Control, supra, the court upheld the right of a liquor association to review the illegal issuance of a license; in the course of his opinion Justice Burling expressed full approval of Hudson Bergen County Retail Liquor Stores Assn. v. Board of Com'rs of City of Hoboken, 135 N.J.L. 502, 510 (E. & A. 1947), where the court indicated that on the pertinent issue of standing "it takes but slight private interest, added to and harmonizing with the public interest." In Cresskill Borough v. Dumont Borough, 28 N.J. Super. 26, 44 (Law Div. 1953), the Law Division upheld the right of a neighboring Borough and its residents to attack a Dumont zoning ordinance which affected them; on appeal, this court found it unnecessary to pass on their standing, though it did state that "at the very least Dumont owes a duty to hear any residents and taxpayers of adjoining municipalities who may be adversely affected by proposed zoning changes." Borough of Cresskill v. Borough of Dumont, 15 N.J. 238, 247 (1954); see Notes, 52 Mich. L. Rev. 1071 (1954); 23 Fordham L. Rev. 384 (1954).
In a recent line of cases dealing with proceedings to set aside wrongful official action, our courts have displayed further evidence of their broad approach to the problem. Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163, 170 (App. Div. 1949); Haines v. Burlington County Bridge Commission, 8 N.J. 539 (1952); see Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952), cert. denied 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952); Taxpayers Association of Cape May, New Jersey v. City of Cape May, 2 N.J. Super. 27, 31 (App. Div. 1949); Koch v. Borough of Seaside Heights, 40 N.J. Super. *663 86, 93 (App. Div. 1956), affirmed 22 N.J. 218 (1956). In the Haines case the court sustained a taxpayer's proceeding against county officials without any showing of private pecuniary harm; in the Taxpayers Association case the court sustained the taxpayer's right to an inspection of municipal records and dismissed the suggestion that its holding would result in an uncontrollable "flood of proceedings"; in the Koch case the Appellate Division sustained a taxpayer's proceeding in lieu of prerogative writ to set aside a wrongful municipal transaction; this court affirmed on the opinion of Judge Conford which had this to say on the issue of standing:
"The action instituted by plaintiff as a taxpayer was founded not only upon an apparent injury to the municipality in a pecuniary sense, thereby implicating the interests of every taxpayer, Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72 (1953); City of Millville v. Board of Education of City of Millville, 100 N.J. Eq. 162, 166 (Ch. 1926), affirmed 101 N.J. Eq. 303 (E. & A. 1927), but, of even more significance, raised a question of gross illegality and abuse of their public responsibilities by the officials of the Borough. It is now firmly held that an action to vindicate the right of the public to honest and faithful rendition of services by public officials will lie at the instance of a citizen taxpayer totally apart from considerations of pecuniary prejudice to the body politic. Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163, 171 (App. Div. 1949); and see Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474-476 (1952), certiorari denied 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), rehearing denied 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952); Garrou v. Teaneck Tryon Co., 11 N.J. 294, 302 (1953)."
In the instant matter the plaintiff is neither a citizen nor a taxpayer of the Borough of Stanhope. But it nevertheless firmly asserts that the Borough has adopted an unconstitutional or illegal ordinance which has caused it very substantial financial harm; it contends that, in all fairness, it should be permitted to attack the ordinance without seeking the formal intervention of a local resident who has suffered no financial harm; and it suggests that there is more rather than less justification for a liberal approach here, on the issue of standing, than there may have *664 been in many of the cited taxpayer cases. It is not disputed that if the ordinance had in terms prohibited the sale of trailers for use within the Borough, the resulting effect on the plaintiff's business would have been sufficiently direct to support its standing to sue. The plaintiff urges that, since the ordinance has in substantial effect outlawed the purchase of trailers for use in the Borough, it has necessarily eliminated their sale for such use, thereby directly affecting the operation of its business. In opposition, the Borough urges that the plaintiff's sole interest is that customers might be lost by reason of the enforcement of the ordinance and it contends that such interest does not legally suffice. It is true that in some instances courts have taken that strict position; but in other instances they have not, particularly where the plaintiff's interest coincided with a strong public interest in having an early and dispositive judicial determination of the constitutionality or legality of a doubtful legislative enactment or administrative order. See Pierce v. Society of the Sisters of the Holy Names, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Station WBT v. Poulnot, 46 F.2d 671 (D.C.D.S.C. 1931); American Can Co. of Massachusetts v. Milk Control Board, 313 Mass. 156, 46 N.E.2d 542 (1943); cf. Joint Anti-Fascist Refugee Committee v. McGrath, supra; Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915); Savage v. Jones, 225 U.S. 501, 32 S.Ct. 715, 56 L.Ed. 1182 (1912); Note, "`Standing' to Attack the Constitutionality of a Statute," 27 N.Y.U.L. Rev. 656 (1952).
In the American Can Co. case the Massachusetts Milk Control Board had issued an order which provided that a milk dealer shall charge an extra cent when the milk is sold in a paper container. A manufacturer of paper containers sought to have the order reviewed and an issue arose as to its standing; the Supreme Judicial Court of Massachusetts expressed the view that it was sufficiently *665 interested and aggrieved within the meaning of the pertinent statutory provisions and that to say otherwise "would be unrealistic and would place theory above fact." [313 Mass. 156, 46 N.E.2d 545]. In the Poulnot case the plaintiff broadcasting station brought a proceeding to enjoin the enforcement of a state tax on receiving sets owned by "persons who compose a part of plaintiff's audience, and who may be in a sense styled the plaintiff's customers." In sustaining the plaintiff's action, the court relied on many Supreme Court decisions, including the Pierce case (268 U.S. 510, 45 S.Ct. 571, 574, 69 L.Ed. 1070), where a parochial school was held to have sufficient standing to attack a state statute providing that all children between the ages of eight and sixteen years must attend public school; in the course of its opinion in the Pierce case, the Supreme Court said:
"Generally, it is entirely true, as urged by counsel, that no person in any business has such an interest in possible customers as to enable him to restrain exercise of proper power of the state upon the ground that he will be deprived of patronage. But the injunctions here sought are not against the exercise of any proper power. Appellees asked protection against arbitrary, unreasonable, and unlawful interference with their patrons, and the consequent destruction of their business and property. Their interest is clear and immediate, within the rule approved in Truax v. Raich, Truax v. Corrigan [257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254], and Terrace v. Thompson, supra [263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255], and many other cases where injunctions have issued to protect business enterprises against interference with the freedom of patrons or customers. Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 38 S.Ct. 65, 62 L.Ed. 260, L.R.A. 1918C, 497, Ann. Cas. 1918B, 461; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; American Steel Foundries v. Tri-City Cent. Trades Council, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360; Nebraska Dist., etc. v. McKelvie, 262 U.S. 404, 43 S.Ct. 628, 67 L.Ed. 1047; Truax v. Corrigan [257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254, 27 A.L.R. 375] and cases there cited."
See also Joint Anti-Fascist Refugee Committee v. McGrath, supra, 341 U.S., at page 154, 71 S.Ct., at page 639, 95 L.Ed., at page 844; Columbia Broadcasting System, *666 Inc., v. United States, supra, 316 U.S., at page 422, 62 S.Ct., at page 1202, 86 L.Ed., at page 1573.
We are satisfied that, under the particular circumstances presented in the instant matter, the plaintiff may fairly be deemed to have a sufficient standing to maintain its action. There has been real and substantial interference with its business and the serious legal questions it has raised should, in the interest of the public as well as the plaintiff, be passed upon without undue delay. We are not disturbed by the Borough's spectre that continued logical liberalization of the standing requirement might bring a flood of litigation which would tax our judicial facilities and unduly burden our governmental subdivisions. Justice Holmes long ago pointed out that experience rather than logic is the life of the law  there should be little doubt as to this court's capacity to deal fairly and effectively with the suggested eventuality. In the meantime, justice would appear to dictate that the plaintiff be afforded an opportunity to be heard on the merits of the claim it has been diligently seeking to assert since the institution of its action in the Law Division.
Reversed.
For reversal  Justices HEHER, OLIPHANT, BURLING, JACOBS and WEINTRAUB  5.
For affirmance  Chief Justice VANDERBILT  1.