8 A.3d 820 (2010)
417 N.J. Super. 115
In the Matter of the ISSUANCE OF ACCESS CONFORMING LOT PERMIT NO. A-17-N-N040-2007 by the New Jersey Department of Transportation for Block 136, Lots 2 and 3 in Mahwah Township, New Jersey.
No. A-0605-09T3.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 2010.
Decided December 9, 2010.
*822 Robert A. Kasuba argued the cause for appellant Paks Fast Service, Inc. (Sills, Cummis & Gross, attorneys; Mr. Kasuba and Kevin J. Moore, Princeton, of counsel and on the briefs).
James L. Lott, Jr., argued the cause for respondents Pilot Corporation, Pilot Travel Centers, LLC and Mahwah Management, LLC (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Mr. Lott, of counsel and on the brief; Scott L. Carlson and Diane N. Hickey, Morristown, on the brief).
Debbie J. Thompson, Deputy Attorney General, argued the cause for respondent New Jersey Department of Transportation (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Thompson, on the brief).
Before Judges SKILLMAN, PARRILLO and ESPINOSA.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The dispositive issue presented by this appeal is whether the Department of Transportation (DOT) is required, in reviewing an application for a highway access permit under the State Highway Access Management Act (Access Act), N.J.S.A. 27:7-89 to -98, to consider data and arguments submitted by a party who objects to issuance of the permit. We conclude that the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, confers a right upon any objector with a sufficient interest in issuance of a highway access permit to qualify as an "interested person" within the intent of N.J.S.A. 52:14B-3.1(a) to submit relevant "data, views or arguments" to the DOT and imposes a corresponding obligation upon the DOT to consider these materials. We also conclude that appellant, which owns property abutting the highway to which the applicant seeks an access permit and is a competitor of the applicant, has a sufficient interest in issuance of the permit to qualify as "interested person." Because the DOT declined to consider the data and arguments submitted by appellant, we reverse the DOT's issuance of the permit.

I.
The party to which the DOT issued the highway access permit challenged in this *823 appeal is respondent Mahwah Management, which owns property abutting the southbound lanes of Route 17. Mahwah Management leases this property to respondent Pilot Corporation, which operates a truck stop on the site through its subsidiary, respondent Pilot Travel Centers, LLC (Pilot).
Pilot proposes to demolish the existing structures used for this business and construct a new convenience store and service station with six diesel fueling positions and twelve gasoline fueling positions. Pilot plans to construct separate parking areas for cars and trucks on the site, with separate driveways providing ingress and egress to Route 17 from each parking area.
This development proposal required the grant of use and bulk variances and site plan approval by the Mahwah Township Board of Adjustment. The proposal also required Pilot to obtain a permit for access to Route 17 from the DOT, which regulates the number, placement, and configuration of driveways along State highways pursuant to the Access Act and the State Highway Access Management Code (Access Code), N.J.A.C. 16:47-1.1 to -9.1.
One precondition for issuance of this permit was the grant of a waiver from the requirement of N.J.A.C. 16:47-3.5(c)(4), which allows a lot located on a State highway to have two driveways only if it has a specified minimum frontage between the centerlines of the two adjoining lots. Pilot needed a waiver because its lot has approximately 200 feet less frontage on Route 17 than required under this section of the Access Code.
Appellant Paks Fast Service, Inc. (Paks) owns and operates a gasoline station, which also abuts the southbound lanes of Route 17 and is located approximately .2 mile north of Pilot's site. Paks participated in the hearings before the Mahwah Board of Adjustment seeking the land use approvals required for Pilot's development project. After the Board granted those approvals, Paks filed an action challenging the Board's approvals in the Law Division, which recently affirmed the Board's resolution.
On October 25, 2007, Mahwah Management filed an application for the required access permit to Route 17 together with a request for various waivers of the provisions of the Access Code, including the one specifying the minimum frontage for construction of two driveways to a single lot. In accordance with N.J.A.C. 16:47-4.3(n), Mahwah Management sent notice of this application and copies of the supporting materials to Mahwah Township and Bergen County.
The Vice Chairman of the Bergen County Board of Freeholders sent a letter to the DOT, dated February 13, 2009, which expressed various concerns about the application. The letter claimed that Mahwah Management's application required a major access permit "with Planning Review." The letter contended that such planning review was required because Mahwah Management's submission to the DOT erroneously stated that its development proposal would result in a less than 200 additional peak-hour trips to and from the lot, in which event planning review is not required, see N.J.A.C. 16:47-4.4(a)(3), but that the applicant's own data showed that its development would result in more than 200 additional peak-hour vehicle trips. The County's letter also indicated that "in the interests of safety," it would prefer that no waivers be granted. The letter closed by requesting that "the application not be acted upon until your professional staff has the opportunity to meet with our professional staff to discuss the matter."
*824 On February 27, 2009, the DOT sent a letter to Mahwah Management's representative indicating that it had approved the access permit application.
On March 31, 2009, the Commissioner of DOT sent a letter to Bergen County, which indicated that the access permit had been issued to the applicant for signature, but had not yet been executed. The letter also stated that although the DOT had already completed its review of the application, DOT staff would be "happy to meet with your staff to discuss your concerns." Insofar as the record before us indicates, no such meeting ever occurred.
After Mahwah Township received notice of Pilot's application for a highway access permit, its Board of Adjustment began hearings on Pilot's application for the land use approvals required for its development project. During those hearings, the Chairman of the Board and Township Engineer sent a letter to the DOT, dated March 27, 2009, expressing concern that Pilot's proposed highway access would increase congestion and suggesting that "in the interest of public safety and the safety of the traveling public along Route 17 and those that would utilize the proposed facility, [Pilot] be permitted to widen the shoulder an additional three (3') feet along the frontage of the property."
Pilot apparently agreed during the hearings before the Board to widen the shoulder on the part of Route 17 abutting its property, and on May 20, 2009, Mahwah Management's representative submitted a proposed "Change of Plan" to the DOT for its access permit. This document was accompanied by plans containing various changes in Mahwah Management's development proposal, including the three-foot widening of the shoulder of Route 17 abutting its property that had been agreed to in response to Mahwah's request. This submission also included a number of changes in the internal layout of Pilot's proposed development. On July 16, 2009, Mahwah Management's representative submitted additional materials to the DOT in connection with this Change of Plan, including a new request for a waiver of the requirement of N.J.A.C. 16:47-3.5(c)(4) concerning the number of driveways allowed on its site.
On June 10, 2009, Paks submitted a letter to the DOT objecting to Mahwah Management's application for a highway access permit. This letter claimed, as had the letter from Bergen County, that Pilot's development project would generate more than 200 additional peak-hour vehicle trips and therefore should be classified as an application for a major access permit "with planning review." This submission was supported by a twenty-three-page traffic impact assessment and ten-page supplemental report prepared by a traffic engineer. Paks' expert also expressed the opinion that the request for a waiver to allow the construction of two driveways on Mahwah Management's site should be denied for safety reasons.
On July 9, 2009, the DOT sent a letter to Paks which stated that its submission would not be considered because the Access Code does not authorize "direct public input" concerning applications for highway access permits. The letter indicated that any opposition to a highway access permit should be presented to the municipal planning board or board of adjustment, which the DOT relies upon "as a forum for citizens and/or their representatives to voice their concerns."
On September 11, 2009, the DOT granted Mahwah Management's application for a highway access permit, including a waiver of the spacing distance requirements of N.J.A.C. 16:47-3.5(c)(4). Paks filed a notice of appeal from this administrative action.
*825 The DOT filed a motion to dismiss the appeal on the ground that Paks lacks standing to challenge issuance of a highway access permit to Pilot. We denied this motion.
Paks subsequently filed a motion for leave to join Mahwah Management and Pilot Corporation as additional parties to the appeal. Respondents filed a cross-motion to dismiss the appeal on the ground that Mahwah Management is a necessary party to the appeal which Paks had failed to join in a timely manner. We granted Paks' motion to join Mahwah Management and Pilot Corporation as parties, but reserved decision on respondents' cross-motion to dismiss the appeal on the ground that the joinder of Mahwah Management was untimely.

II.
Before considering the merits, we first address Pilot's reserved motion to dismiss. This motion is predicated upon Paks' failure to make timely service of its notice of appeal upon Mahwah Management, which owns the Route 17 site and is the party to which the access permit was issued.[1] Service upon Mahwah Management was not made until approximately seven months after filing of the notice of appeal, when Paks filed a motion to join Mahwah Management and Pilot Corporation as parties.
The timely filing of a notice of appeal and timely service upon less than all indispensable parties may be considered in some circumstances to constitute "substantial compliance" with the court rule governing appeals from state agency action. See Alberti v. Civil Serv. Comm'n, 41 N.J. 147, 154, 195 A.2d 297 (1963). In determining whether dismissal is required based upon an appellant's failure to make timely service of the notice of appeal upon all indispensable parties, one significant factor is whether the appellant may understandably have been misled as to who are indispensable parties. See id. at 155, 195 A.2d 297. Another even more significant factor is whether the indispensable party has been prejudiced by the failure to receive timely service of the notice of appeal. Amico v. Bd. of Review, 49 N.J. 159, 164, 228 A.2d 865 (1967); Alberti, supra, 41 N.J. at 154-55, 195 A.2d 297; see also Sturmer v. Twp. of Readington, 90 N.J.Super. 341, 343-45, 217 A.2d 622 (App. Div.1966).
Mahwah Management, as owner of the property and the party to which the DOT granted the access permit, is an indispensable party to this appeal. Nevertheless, Paks' failure to make timely service of the notice of appeal upon Mahwah Management does not require dismissal of the appeal.
There was a close community of interest between Mahwah Management, as the owner of the property, and Pilot, as the possessor of the property under a long-term lease and the party undertaking the development project for which the access permit is required. Furthermore, some of the paperwork submitted to the DOT in support of the application could have created the impression that Pilot was the party seeking the permit. For example, Joseph Staigar Engineering, L.L.C., the traffic engineering consulting firm that prepared the application, identified itself in an October 15, 2007 letter to the DOT transmitting the application, as representing "Pilot Travel Centers, L.L.C. in their efforts to develop a Pilot Travel Center on *826 the above referenced site." Moreover, Pilot, not Mahwah Management, was the party who applied to the Mahwah Board of Adjustment for the various land use approvals required for its development project. Under these circumstances, Paks may have made an understandable mistake concerning the identity of the party to which the access permit had been issued. Most significantly, Mahwah Management does not claim that it was unaware of Paks' appeal from the DOT's grant of the access permit. Therefore, we conclude that, as in Alberti, supra, 41 N.J. at 156-57, 195 A.2d 297, Paks' timely filing and service of the notice of appeal upon the DOT and Pilot constituted substantial compliance with the appellate rules.

III.
Pilot also seeks dismissal of this appeal on the ground that Paks lacks standing to appeal the issuance of an access permit to Route 17 to Pilot. We previously denied a motion by the DOT, in which Pilot joined, to dismiss the appeal on this same ground. That denial constituted the "law of the case," which ordinarily should be followed in later stages of the same case. See State v. Reldan, 100 N.J. 187, 203, 495 A.2d 76 (1985). The "law of the case" doctrine is a discretionary rule of practice only. Id. at 205, 495 A.2d 76. Consequently, a court may reconsider a prior ruling "to serve the interests of justice," ibid., or in other compelling circumstances. Moreover, an appellate court may be somewhat more willing to reconsider a ruling made summarily by the denial or grant of a motion than a decision made after full consideration of an appeal. See State v. Ortiz, 202 N.J.Super. 233, 242-43, 494 A.2d 822 (App.Div.), certif. denied, 102 N.J. 300, 508 A.2d 187 (1985). Although we conclude that our denial of the DOT's motion to dismiss for lack of standing was correct and thus does not require reconsideration, it is appropriate to explain the reasons for that denial.
New Jersey takes "a liberal approach to standing to seek review of administrative actions." In re Camden County, 170 N.J. 439, 448, 790 A.2d 158 (2002). "[S]tanding to seek judicial review of an administrative agency's final action or decision is available to . . . any one who is affected or aggrieved in fact by that decision." Id. at 446, 790 A.2d 158. To have standing, an appellant "must present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that [appellant] will suffer harm in the event of an unfavorable decision." Id. at 449, 790 A.2d 158.
Under this liberal approach to standing, owners of other properties in the vicinity of a property for which a permit or other land use approval has been granted may appeal the approval. See In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 471, 888 A.2d 441 (2006) (noting that even though owners of property in the vicinity of a property for which an application was made for a freshwater wetlands permit were not entitled to a trial-type hearing, they could secure "judicial review" of that decision); see also In re Amico/Tunnel Carwash, 371 N.J.Super. 199, 215, 852 A.2d 277 (App.Div.2004); Normandy Beach Improvement Ass'n v. Comm'r, Dep't of Envtl. Prot., 193 N.J.Super. 57, 64-65, 472 A.2d 156 (App.Div. 1983), certif. denied, 96 N.J. 305, 475 A.2d 596 (1984). The competitors of a party who has received a governmental approval required for a proposed business operation also have standing to appeal the approval. See, e.g., Elizabeth Fed. Sav. & Loan Ass'n v. Howell, 24 N.J. 488, 499-504, 132 A.2d 779 (1957); see also Med. Soc'y of N.J. *827 v. Bakke, 383 N.J.Super. 498, 503-05, 892 A.2d 728 (App.Div.2006).
Paks has standing to appeal the DOT's issuance of the access permit to Pilot both as the owner of another nearby property abutting Route 17 and as a competitor. Paks alleges that the use of its property, which is located on the same side of Route 17 as Pilot's property only .2 mile to the north, "will be negatively impacted by the congestion and accidents caused by the Pilot site's faulty [highway access] design." Paks also alleges that it will suffer economic harm as a result of Pilot's sale of gasoline from the site in competition with Paks' gasoline station.
Moreover, Paks' opposition to the issuance of an access permit to Pilot mirrors the opposition expressed by Bergen County. Consequently, this is a case in which Paks' interest in securing judicial review of the DOT's decision "coincide[s] with a strong public interest" in such review. Al Walker, Inc. v. Borough of Stanhope, 23 N.J. 657, 664, 130 A.2d 372 (1957).
Under New Jersey's liberal approach to standing, these interests are sufficient to confer standing upon Paks to pursue this appeal.

IV.
We turn now to the dispositive issue presented by this appeal, which is whether the DOT is required to consider the data and arguments submitted by a party such as Paks in considering an application for a highway access permit.
The Access Act does not include any provisions regarding the procedures that the DOT must follow in considering an application for an access permit. Therefore, those procedures are governed by the APA.
The APA establishes two different types of procedural rights in a permit decision, depending on the nature of a party's interest. The first right is provided by N.J.S.A. 52:14B-9(a), N.J.S.A. 52:14B-2(b), and N.J.S.A. 52:14B-3.1(b), under which a party who has a "particularized property interest" or is "directly affected by a permitting decision" is entitled to an adjudicatory hearing. However, if a party's interest in a permit decision falls short of the interest required to obtain an adjudicatory hearing, that party still may be entitled to submit "data, views or arguments" to the decision-maker. This right is conferred by N.J.S.A. 52:14B-3.1(a), which provides that "[u]nder the provisions of the [APA], . . . all interested persons are afforded reasonable opportunity to submit data, views or arguments, orally or in writing, during any proceedings involving a permit decision."[2]
Paks does not claim to be entitled to an adjudicatory hearing; it only seeks to have the DOT consider its "data, views or arguments" regarding Pilot's application for an access permit. Therefore, the question is not whether Paks is "[a] person who has [a] particularized property interest [in Pilot's access permit application] sufficient to *828 require a hearing on constitutional grounds," N.J.S.A. 52:14B-2, but rather whether Paks is an "interested person" within the intent of N.J.S.A. 52:14B-3.1.
The APA does not include any definition of "interested person." Moreover, our case law contains only limited discussion of the interest a party must have in a permit decision to be entitled under N.J.S.A. 52:14B-3.1(a) to present its "data, views or arguments" to the decision-maker. In both Freshwater Wetlands Permits, supra, 185 N.J. 452, 888 A.2d 441, and In re Riverview Development, LLC, 411 N.J.Super. 409, 986 A.2d 714 (App.Div.), certif. denied, 202 N.J. 347, 997 A.2d 232 (2010), the issue was whether parties owning property in the area of a proposed development project had the right to an adjudicatory hearing to contest issuance of a permit required to authorize the development, and in both cases the court held that the property owners did not have that right. However, before considering the property owners' right to an adjudicatory hearing, the courts briefly discussed the property owners' right under N.J.S.A. 52:14B-3.1(a) to present "data, views or arguments" in opposition to issuance of the permit.
In Freshwater Wetlands Permits, which involved an application for a freshwater wetlands permit to fill a portion of "isolated wetlands" as required by the Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 to -30, Justice Albin stated:
Under the [APA], "all interested persons are afforded reasonable opportunity to submit data, views or arguments, orally or in writing, during any proceedings involving a permit decision." N.J.S.A. 52:14B-3.1(a). In this case, the neighboring homeowners clearly were "interested persons" and had a right to protest the issuance of a permit to fill wetlands on [the applicant's] property.
[185 N.J. at 463, 888 A.2d 441.]
Similarly, in Riverview, which involved an application for a waterfront development permit under the Coastal Zone Management Regulations, N.J.A.C. 7:7E-1.1 to -8A.5, Judge Sabatino stated:
The Legislature has maintained significant avenues for third-party objectors to present their concerns about proposed permits to agency decision-makers before they reach a final determination on a permit application. Under Section 3.1(a) of the APA, "all interested persons are [to be] afforded reasonable opportunity to submit data, views or arguments, orally or in writing, during any proceedings involving a permit decision[.]" To be sure, such oral presentations and written submissions are less formal than a contested case tried before an [ALJ]. Even so, they can provide an effective and efficient means for third-party objectors to voice their concerns with the State officials who will make the ultimate permitting decision.
[411 N.J.Super. at 425, 986 A.2d 714 (citations omitted).]
There was no dispute in either Freshwater Wetlands Permits or Riverview concerning the objectors' rights to submit "data, views or arguments" in opposition to the contested permit. Consequently, the courts did not have occasion to consider the nature of the interest a party must have in issuance of a permit to qualify as an "interested person" within the intent of N.J.S.A. 52:14B-3.1(a). However, it is clear that property owners with an interest in a proposed development project comparable to the interests of the property owners in Freshwater Wetlands Permits and Riverview are "interested persons." In Freshwater Wetlands Permits, the objectors were described as owners of nearby property who had been adversely affected *829 by run-off from the development site and had "express[ed] concern that filling the wetlands would worsen the flooding conditions." 185 N.J. at 458, 888 A.2d 441. In Riverview, the objectors were described as "townhouse residents, whose views of the Hudson River and the New York City skyline will be fully or partially blocked by a proposed high-rise development," and who had expressed concern that "the project will worsen traffic near their hillside dwellings." 411 N.J.Super. at 411, 986 A.2d 714.
Although the interest of the property owners in opposing issuance of the wetlands permit involved in Freshwater Wetlands Permits was arguably more direct than Paks' interest in the access permit issued to Pilot, we believe that Paks' asserted interest in opposing Pilot's access permit is as substantial as the interest of the property owners in Riverview in opposing issuance of a waterfront development permit. One interest asserted by those property owners was that the development would worsen traffic in the area of their property, which is similar to the interest Paks asserts in opposing the DOT's issuance of a highway access permit to Pilot. The other interest asserted by the property owners in Riverview was that their view of the Hudson River and New York City skyline would be blocked by the proposed development. It is not self-evident to us that this interest is any more substantial than Paks' interest in opposing the development plans of a potential competitor.
Furthermore, as discussed in section II of this opinion, New Jersey has taken a liberal view of the standing of businesses to participate in proceedings involving an application by a potential competitor for a permit or other governmental approval, particularly if there is also a public interest in that approval. See, e.g., Elizabeth Fed. Sav. & Loan Ass'n v. Howell, supra, 24 N.J. at 499-504, 132 A.2d 779; Al Walker, Inc. v. Borough of Stanhope, supra, 23 N.J. at 664, 130 A.2d 372. There is an obvious public interest in issuance of an access permit that could increase highway congestion and the risk of motor vehicle accidents.
Moreover, we have recognized in other contexts that an expansive view should be taken of the obligation of State agencies to consider information submitted by parties opposed to the grant of a governmental approval. For example, in discussing the Council on Affordable Housing's obligation to consider information submitted by a party opposed to the grant of a municipality's petition for substantive certification of its plan for compliance with the Fair Housing Act, N.J.S.A. 52:27D-301 to -329, and its implementing regulations, we observed:
[A] property owner or other interested party may provide valuable information that would not otherwise be available to COAH. COAH should not turn a deaf ear to such information simply because the source is a party which failed to file a timely objection to the plan.
[In re Petition for Substantive Certification, Twp. of Southampton, 338 N.J.Super. 103, 114, 768 A.2d 233 (App.Div.), certif. denied, 169 N.J. 610, 782 A.2d 428 (2001).]
In reaching this conclusion, we noted that the Council's "capacity to make an independent evaluation of the information a municipality submits in support of a [compliance plan required by the Fair Housing Act] may be limited by time and resources." Ibid.
Similarly, the DOT's capacity to make an independent evaluation of the information submitted by an applicant for a highway access permit "may be limited by time and resources." Thus, the DOT's consideration of the data submitted by an objector to issuance of a permit may afford the *830 DOT an opportunity for a more balanced evaluation of whether issuance of the permit would be consistent with the policies of the Access Act than simply reviewing the applicant's one-sided presentation.
For these reasons, we conclude that Paks is an "interested person" in the issuance of a permit to Pilot for access to Route 17, which under N.J.S.A. 52:14B-3.1(a) must be "afforded reasonable opportunity to submit data, views or arguments" regarding the DOT's permit decision.[3]
The next question is whether Paks was afforded this "reasonable opportunity." The Access Code provides in N.J.A.C. 16:47-4.3(n) that an applicant for an access permit must submit a copy of its application to the municipality in which the property is located and the county planning board and advise them that they have thirty days within which to submit comments. In refusing to consider Paks' opposition to Pilot's application and the expert reports submitted in support of that opposition, the DOT took the position that Paks could submit any comments it may have concerning Pilot's application to the municipal planning board or board of adjustment, which presumably could transmit those comments to the DOT if it saw fit.
However, a municipal land use agency very well may not agree with an interested person's objections to an access permit and therefore may choose not to transmit those comments to the DOT. Indeed, the land use agency could advise the DOT that it supports issuance of the permit. Therefore, the opportunity to submit comments to a municipal land use agency does not afford an interested person such as Paks the "reasonable opportunity" provided by N.J.S.A. 52:14B-3.1(a) to submit "data, views or arguments" to the decision-maker, here the DOT.
We recognize that in this case Bergen County submitted opposition to Pilot's access permit application that was similar to Paks' opposition. However, this opposition consisted simply of a rather conclusionary three-page letter, unaccompanied by any supporting data or expert report. In contrast, Paks' opposition was supported by a twenty-three-page report and a ten-page supplemental report by a traffic engineer which contained extensive data and detailed analyses. Therefore, we conclude that the DOT's refusal to consider those reports deprived Paks of the reasonable opportunity afforded by N.J.S.A. 52:14B-3.1(a) to submit "data, views or arguments" regarding Pilot's application, and for this reason the DOT's issuance of the permit must be reversed and the matter remanded to the agency.

V.
Because we conclude that the DOT is required to reconsider Pilot's application *831 for an access permit in light of the data and arguments presented by Paks, there is no need to consider Paks' arguments that the DOT did not make adequate findings to support the grant of a waiver from the spacing distance requirement of N.J.A.C. 16:47-3.5(c)(4) and that there is not adequate evidentiary support for its administrative action. However, we note for the guidance of the DOT on remand that even when an adjudicatory hearing is not required, an agency may be required to "set forth basic findings of fact, supported by the evidence and supporting the ultimate conclusions and final determination, for the salutary purpose of informing the interested parties and any reviewing tribunal of the basis on which the final decision was reached so that it may be readily determined whether the result is sufficiently and soundly grounded or derives from arbitrary, capricious or extra-legal considerations." In re Issuance of Permit by Dep't of Envtl. Prot. to Ciba-Geigy Corp., 120 N.J. 164, 172, 576 A.2d 784 (1990) (quoting In re Application of Howard Sav. Inst., 32 N.J. 29, 52, 159 A.2d 113 (1960)); see also In re Authorization for Freshwater Wetlands Gen. Permits, 372 N.J.Super. 578, 595-98, 860 A.2d 450 (App. Div.2004).
Accordingly, the DOT's final action granting a highway access permit to Pilot is reversed, and the matter is remanded to the DOT for further proceedings in conformity with this opinion.
NOTES
[1] Although Pilot Corporation, which is Pilot's parent company, was also not joined as a party in a timely manner, the motion to dismiss is based solely on the late joinder of Mahwah Management.
[2] N.J.S.A. 52:14B-3.1(a) was enacted as part of 1993 amendments to the APA. L. 1993, c. 359. The background and primary purpose of these amendments are discussed in In re Amico/Tunnel Carwash, supra, 371 N.J.Super. at 208-10, 852 A.2d 277. N.J.S.A. 52:14B-3.1(a) is a subsection of the legislative findings and declarations relating to those amendments. Such a provision is given substantive effect when that appears to have been the legislative intent. See Burnett v. Cnty. of Bergen, 198 N.J. 408, 422-23, 968 A.2d 1151 (2009). N.J.S.A. 52:14B-3.1(a) must be construed to have substantive effect because it confers a right upon interested persons to submit data and argument to a government official considering an application for a permit, which is not repeated in any other section of the APA.
[3] We note that the term "interested person" is used in three other sections of the APA: in N.J.S.A. 52:14B-4(a)(3), to describe the parties who are entitled to submit comments regarding a proposed administrative rule; in N.J.S.A. 52:14B-4(f), to describe the parties who are entitled to petition an agency to adopt, amend or repeal a rule; and in N.J.S.A. 52:14B-8, to describe the parties who may seek a declaratory ruling. We have no need in deciding this appeal to determine whether the term "interested person" as used in these other sections of the APA has the same meaning as in N.J.S.A. 52:14B-3.1(a). We only note that we have extended a liberal interpretation to "interested person" as used in N.J.S.A. 52:14B-8 "based upon a venerable tradition of liberal application of standing criteria," which can be satisfied even by a "slight private interest, added to and harmonizing with the general public interest." Ridgewood Educ. Ass'n v. Ridgewood Bd. of Educ., 284 N.J.Super. 427, 431-33, 665 A.2d 776 (App.Div.1995) (quoting Hudson Bergen County Retail Liquor Stores Ass'n v. Bd. of Comm'rs, 135 N.J.L. 502, 510, 52 A.2d 668 (E. & A.1947)).