AMERICAN CAN COMPANY OF MASSACHUSETTS *vs.* MILK CONTROL BOARD.

Suffolk. December 8, 1943. — June 2, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, & SPALDING, JJ.

*Milk. Equity Jurisdiction,* Milk control. *Equity Pleading and Practice,* Injunction.

A general minimum price fixing order of the State milk control board, fixing a "non-refundable minimum container charge of one cent per container . . . over and above the applicable minimum wholesale and retail prices" elsewhere set forth in the order "where milk and/or cream is sold in single service paper containers by milk dealers or by stores," should be construed not as fixing a separate price for the container as such but, under the authority of §§ 10–12 of G. L. (Ter. Ed.) c. 94A, inserted by St. 1941, c. 691, § 2, as setting up classifications of milk and cream sold in single service paper containers and establishing therefor minimum prices one cent higher than the minimum prices established for milk and cream of the same grade not sold in such containers.

Under §§ 10–12 of G. L. (Ter. Ed.) c. 94A, inserted by St. 1941, c. 691, § 2, minimum prices fixed by order of the State milk control board must bear some rational relation to the expressed purpose of the law to provide for the establishing of minimum prices for milk which "will be most beneficial to the public interest," will "best protect the milk industry," and will "insure a supply of pure, fresh milk ade-

quate to cover consumer needs": the board has no power to discriminate arbitrarily against the use of single service paper containers by imposing an added charge upon milk sold in them to the disadvantage of persons interested in them. Per QUA, J.

The test of the validity of an order of the State milk control board fixing higher minimum prices for milk and cream sold in single service paper containers than for milk and cream of the same grade not sold in such containers is whether the use of such containers is a more costly method of selling milk and cream than is the use of other containers.

A final decree of the Superior Court, entered after a hearing on the merits of a petition under § 21 of G. L. (Ter. Ed.) c. 94A, inserted by St. 1941, c. 691, § 2, for review of proceedings of the State milk control board resulting in an order fixing a "non-refundable minimum container charge of one cent per container . . . over and above the applicable minimum wholesale and retail prices" elsewhere set forth in the order "where milk and/or cream is sold in single service paper containers by milk dealers or by stores," should not have included an injunction against the issuing or promulgating of like orders in the future.

PETITION FOR REVIEW, filed in the Superior Court on June 12, 1942.

The case was heard on its merits by *Walsh*, J.

In this court, the case was argued at the bar in December, 1943, before *Field*, C.J., *Donahue*, *Lummus*, *Qua*, & *Cox*, JJ., and after the retirement of *Donahue* & *Cox*, JJ., was submitted on briefs to *Dolan*, *Ronan*, & *Spalding*, JJ.

*M. A. Westgate*, Assistant Attorney General, for the respondent.

*J. B. Ely*, (*R. Ely* with him,) for the petitioner.

QUA, J. This is a petition to the Superior Court under § 21 of G. L. (Ter. Ed.) c. 94A, known as the milk control law, inserted by St. 1941, c. 691, § 2, for a review of proceedings of the milk control board which resulted in an order by the board alleged by the petitioner to be without authority of law.

When the case was here on a previous occasion, we held that, upon the allegations of the petition, the petitioner was a "person aggrieved" by the order within the meaning of the words "person aggrieved" in § 21; that it was entitled to a review under that section; and that a demurrer to the petition should have been overruled. *American Can Co.* v. *Milk Control Board*, 313 Mass. 156. The case has since been

heard on its merits in the Superior Court, and a final decree has been entered enjoining the board from enforcing the order and from issuing or promulgating any similar order.

The order complained of is paragraph 5 of "Article V" of a comprehensive general order, entitled "Official Order No. G17–504   Effective May 30, 1942," applicable to "Milk-Marketing Area No. 17," which comprises Boston and a number of cities and towns in its vicinity.   The general order, in "Article II" and "Article III," contains detailed wholesale and retail price schedules for unit quantities of different grades and kinds of milk, buttermilk, and cream, all of which are within the definition of "milk" in § 1 of the milk control law.   Paragraph 5 of "Article V" reads, "A non-refundable minimum container charge of 1¢ per container shall be made over and above the applicable minimum wholesale and retail prices set forth in Articles II and III above where milk and/or cream is sold in single service paper containers by milk dealers or by stores."

At the hearing on the merits in the Superior Court the truth was admitted of the facts stated in the first eight paragraphs of the petition.   These are in substance that the petitioner owns machinery and equipment used for the sole purpose of packaging milk and milk products in paper containers and is engaged in the business of leasing or selling such machines and containers and has invested large sums of money in the business, and that paragraph 5 of "Article V" deprives the petitioner of a substantial and valuable market for its machinery, equipment, and paper containers and makes it impossible for the petitioner to do business with milk producers and dealers in the Greater Boston market.   In other words, the board admitted in substance that the additional charge of one cent for each unit of milk sold in a paper container over and above the price of the same unit of milk sold in a glass bottle or in some other container was prohibitive and prevented the petitioner from doing business in the area.

Although the extra one cent charge is described in the order as a "container charge," we think it should not be construed as fixing a separate price for the container as such,

a type of order for which no express authority is conferred by the law, but that it should be construed as setting up classifications of milk or cream, consisting of milk or cream sold in single service paper containers, for which minimum prices are established one cent higher than the minimum prices established for similar classes not sold in such containers. The disputed paragraph is part of a general minimum price fixing order and should be construed as intended to be promulgated under the authority of §§ 10–12 of the law. The principal questions underlying all aspects of the case are whether such classifications can ever be legally established and, if they can ever be legally established, under what circumstances they can be legally established. These are still live issues in the case, since the validity of such classifications is attacked, notwithstanding admissions of the board to which reference is hereinafter made. The matter has been fully argued on both sides and should be decided to the extent that decision is now possible.

Section 11 (b) provides that a minimum price order may classify milk "by such forms, classes, grades or uses as the board may deem advisable," and § 10 provides that in establishing minimum prices the board "shall cause said prices to be fair, just and reasonable, and, to accomplish that end, shall take into consideration and be guided by costs of production, hauling, handling, processing, storage, distribution and other cost factors involved in the production and marketing of milk . . .." Under these provisions, and in accordance with a fair construction of the law as a whole, the board in fixing minimum prices can take into account not only the kind or quality of the product sold but the entire service rendered by the seller in making the sale, so that a higher minimum price can be fixed for milk that is delivered at the residence of the buyer than for the same kind and quantity of milk not so delivered, and a higher minimum price can be fixed for milk where the container is furnished than where it is not furnished. But all price classifications and all rules in respect to prices must bear some rational relation to the expressed purpose of the law to provide for the establishing of minimum prices for

milk which "will be most beneficial to the public interest," will "best protect the milk industry," and "insure a supply of pure, fresh milk adequate to cover consumer needs." § 10. The paper container is, or may be, a proper container for milk. When of the required capacity and "sealed as measures," paper containers "may be used as provided by law for glass milk jars and bottles." G. L. (Ter. Ed.) c. 98, § 16. The board has no power to discriminate arbitrarily against the use of such containers by imposing an added charge upon milk sold in them to the disadvantage of persons interested in that form of container. In order to be valid any such added charge must have some tendency to promote the objects of the milk control law. Only for the promotion of those objects does the board have power to make regulations affecting the manner in which milk dealers shall conduct their businesses and make deliveries or to make regulations affecting the business and property of persons who, like the petitioner, are not engaged in the milk business. We can conceive of no way in which such a "container charge" can reasonably be supposed to have any tendency to accomplish the objects of the law, and none has been pointed out to our satisfaction, unless it is a fact that in the long run paper containers are more costly than containers of glass or of other materials which can be used more than once, so that a dealer who sells milk in paper containers furnishes to his customer a different and more expensive service than one who sells the same milk in some other container and is therefore reasonably entitled to the benefit of a higher minimum price fairly proportional to the higher cost. We are of opinion that the test of the validity of the so called "container charge" is to be found in the answer to the question whether the use of the container with respect to which the charge is imposed is a more costly method of selling milk than is the use of containers with respect to which no charge is imposed.

The petitioner contends that the very voluminous transcript of the hearings before the board which was filed with the petition in the Superior Court contains no evidence tending to show that the cost of supplying milk in paper

containers is greater than the cost of supplying it in other containers; that there are no findings of the board to that effect; and that the disputed order therefore lacks the evidential support and the findings which the petitioner contends are required by § 21, and is invalid. We need not pass upon these contentions, since the board has admitted that the entire comprehensive order G17–504, of which the disputed Article V, paragraph 5, is a part, is invalid for failure to observe certain procedural requirements of the law. We understand that the board no longer objects to that part of the decree of the Superior Court which enjoins the enforcement of paragraph 5 of Article V of Official Order No. G17–504. We do not pause to discuss whether under the language of § 21 the decree should have been cast in the form of a "revision or reversal" of the order of the board, with or without an order of the court "to stay or supersede" the order of the board, rather than solely in the ordinary form of an injunction.

The presently important part of the decree is the latter part, which enjoins the board from issuing or promulgating in the future any oi der or regulation imposing a nonrefundable container charge where milk or cream is sold in single service paper containers by milk dealers or stores. We think this part of the decree goes too far. Whatever may now be the fact, and whatever may be the deficiencies in the present record, we do not see how it is now possible to determine for all time that at no future hearings can it be shown that the use of the single service paper container is a more expensive method of packaging milk than the use of other containers, so that the dealer using it renders a higher cost service which purchasers may for some reason prefer and for which they may fairly be required to pay a proportionately higher price. There can be no doubt that a dealer who delivers in a paper container renders a service different from that of a dealer who delivers in a glass bottle, for example. The fact that the glass bottle must be returned, while the paper container is used but once and is not returned, may be a substantial difference. There may be other differences that affect the quality of

the transaction. If a difference in the quality of the transaction is accompanied by a difference in cost we think that the foundation might be laid for a difference in price. Since we think circumstances might conceivably exist which would justify a price differential of the character here involved, we do not understand how the board can be precluded in advance from exercising its authority by making in good faith a proper and reasonable order, if such circumstances should exist.

We need not determine whether an injunction against the making of other future orders by the board is ever properly a part of the final decree in a proceeding under § 21 for the review of a particular order previously made.

The decree is to be modified by omitting the part relating to the issuing or promulgating of future orders, and as so modified is affirmed.

*Ordered accordingly.*