Agnes, Peter W., J.

INTRODUCTION

The plaintiff, Ernest W. Foster, Jr. (“Foster”), filed this action seeking judicial review of a decision of the Worcester Zoning Board of Appeals (the “Board”) pursuant to G.L.c. 40A, §17. This matter is before the court on the defendants’ motion for summary judgment. For the following reasons, the defendants’ motion is ALLOWED.

BACKGROUND

The undisputed facts and the disputed facts viewed in the light most favorable to Foster, the non-moving party are as follows.
Prior to the events giving rise to the current litigation, Foster owned property located at 510 Cambridge Street - 4 McKeon Road, Worcester, Massachusetts (the “Locus”). In 1983, Foster obtained a permit to convert the Locus from a vacant school to a multifamily dwelling. The Locus was then and is presently located in a zoning district designated as BL-1, in which multifamily dwellings are permitted without a special permit.[2] College Square Realty Trust (“College Square Trust”) (of which the defendant Dennis B. Clair is trustee) currently owns the Locus. Foster presently owns property located at 10 McKeon Road, Worcester, Massachusetts, that abuts the Locus, as well as a three-family house located at 513 Cambridge Street, across the street from the Locus.
In February 2004, College Square Trust leased the Locus to the defendant Central Massachusetts Housing Alliance (“CMHA”), which provides housing to homeless families through a contract with the Massachusetts Department of Transitional Assistance (“DTA”). CMHA’s use of the Locus satisfies the DTA’s Request for Responses (“RFR”) for a “Temporary, Emergency Congregate Shelter for Families.” According to Grace Caremark, CHMA’s Executive Director, the “innovative apartment-based program” provides residents with on-site education and support. The Locus contains thirty-five apartments, each with a full bathroom, a full kitchen and one or two bedrooms. Families may reside there for several months.
On May 26, 2004, Foster requested that the Director of Code Enforcement in Worcester (“Director”) order the CHMA to cease and desist its operations at the Locus as it was operating without a special permit. Foster opposed CHMA’s use of the Locus, because he contended that it constitutes a “temporary shelter” for which a special permit is required.[3] The Director denied Foster’s request. Foster then appealed to the Board, which held a public hearing on the matter on June 28, 2004. The Board decided by a vote of 3-2 to approve Foster’s appeal. However, because a super-majority vote (4-1) is required to overturn the Director’s decision, the decision not to investigate the use of the Locus stood.
Foster markets his own properties for rental and contends that he has lost rental income due to CHMA’s use of the Locus as a temporary shelter. Foster has also observed children from the Locus trespassing on his properly.

DISCUSSION

Summary judgment will be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). To prevail on its summary judgment motion, the moving party must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles it to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). “[A]ll evidentiary inferences must be resolved in favor of the [nomnoving party].” Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 544 (2006).
*407 The nonmoving party, however, cannot defeat a motion for summary judgment by merely asserting that facts are disputed. Mass.R.Civ.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment the nonmoving party must “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “Conclusoiy statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985). Further, “neither . . . conclusoiy statements, nor assertions of inferences not based on underlying facts will suffice” to establish a genuine issue of material fact requiring a trial. First Nat’l Bank of Boston v. Blade, 379 Mass. 243, 246 (1979).
The defendants first contend that Foster lacks standing to bring this action. “Standing is an issue of subject matter jurisdiction.” Planning Bd. of Marshall v. Zoning Bd. of Appeals of Pembroke, 427 Mass. 699, 703 (1998).[4] To have standing, Foster must be aggrieved by the Board’s decision. G.L.c. 40A, § 17. A plaintiff is a “person aggrieved” if he suffers a “definite violation of a private right, a private property interest, or a private legal interest.” Harvard Square Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass.App.Ct. 491, 493, rev. denied, 405 Mass. 1204 (1989). Abutters, who are provided with notice of zoning hearings, receive the benefit of a rebuttable presumption that they are “persons aggrieved” and, thus, have standing. Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996); cf Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204 (1957) (“[TJhere is a presumption that property owners to whom the board in the performance of its statutory obligation has sent notice as persons deemed by the board to be affected thereby have an interest and are persons aggrieved”). If that presumption is challenged, “the jurisdictional question is decided on ‘all the evidence with no benefit to the plaintiff]] from the presumption.’ ” Marashlian, 421 Mass. at 721, quoting Barvenik v. Aldermen of Newton, 33 Mass.App.Ct. 129, 131 (1992). The plaintiff must then “put forth credible evidence to substantiate his allegations,” and standing is “essentially a question of fact for the trial judge.” Id,
Here, the defendants argue that CHMA’s use of the Locus is for all practical intents and purposes identical to its previous use as a multifamily rental dwelling, thus causing no injury to Foster. The defendants put forth credible evidence that the Locus houses families in an apartment-type setting and that the goal is to provide transitional, longer-term housing in contrast to housing that fits the definition of a “temporary shelter” as defined in the zoning ordinance. The burden thus shifts to Foster to provide credible evidence substantiating his allegations that he has been harmed by the alleged non-conforming use. Foster contends that he is aggrieved by the Board’s decision, and thus has standing, because the use of the Locus as a shelter has caused him to lose tenants and rental income.[5] Foster also notes a few instances of trespass on his properly by children residing at the Locus.
To show an infringement of his legal rights, Foster must demonstrate a particularized injury flowing from the Board’s decision that differs from the injury to the community at large. Bell v. Zoning Bd. of Appeals of Gloucester, 429 Mass. 551, 554 (1999). The infringement must be more than speculative. Marashlian, 421 Mass. at 721-23. Claimed diminution of property values can give rise to standing, but “must be derivative of or related to cognizable interests protected by the applicable zoning scheme.” Standerwick v. Zoning Bd. cf Appeals of Andover, 447 Mass. 20, 31-32 (2006), citing Tranfaglia v. Building Comm’r of Winchester, 306 Mass. 495, 503-04 (1940) (zoning legislation “is not designed for the preservation of the economic value of property, except in so far as that end is served by making the community a safe and healthy place in which to live”).
Here, Foster contends that he lost rental income as a result of the undesirable placement of a shelter on the Locus. However, while he did include evidence of income and expenses from 2003 to 2005, he has not provided any evidence that the reduction in rental income he claims is attributable to the current use of the Locus and not to other causes. Cf. Barvenik, 33 Mass.App.Ct. at 133 (Plaintiff “must provide specific evidence demonstrating ... a diminution in the value of his property, at least in his property or legal rights being more adversely affected by the activity authorized by the permit than . . . they would be as a result of the uses and activities permitted as of right on the defendant’s locus”); see also American Can Co. v. Milk Control Bd., 313 Mass. 156, 160 (1943) (“[AJggrievement is shown by proof that the plaintiff has suffered an ascertainable property loss as a proximate consequence of the board’s action”). Foster’s claims pertaining to economic loss, therefore, do not confer standing.
Foster’s claims of trespass also fail to support standing, as there is no evidence that the current use of the Locus contributes to a greater risk of children wandering onto his property than its use as a purely rental property without on-site support. Foster has therefore failed to show that his “legal rights [are] more-adversely affected by the activity authorized by the permit than . . . they would be as a result of the uses and activities permitted as of right on the defendant’s locus.” Barvenik, 33 Mass.App.Ct. at 133.

ORDER

For the foregoing reasons, it is hereby ORDERED that the motion of the defendants for summary judgment be ALLOWED. Plaintiffs complaint is dismissed for lack of subject matter jurisdiction.

The zoning ordinance defines a multifamily dwelling as “A building or portion thereof used as a multiple dwelling for the purpose of providing four (4) or more separate dwelling units with shared means of ingress or egress and other essential facilities.” A dwelling unit is defined as “a single unit within a dwelling which provides complete, independent living facilities for one (1) or more persons including permanent provisions for living, sleeping, eating, cooking and sanitation.”

The zoning ordinance defines a “temporary shelter” as “[a] building or portion of a structure set aside for the provision of overnight accommodations for the homeless, which may also provide incidental food service and/or other social services.”

“[S]ubject matter jurisdiction may be challenged at any stage of a proceeding.” General Acc. Ins. Co. of America v. Bank of New England-West, N.A., 403 Mass. 473, 474 (1988).

While the plaintiff asserts that the locus is used as a temporary shelter in violation of the law, he has offered no evidence to support that claim. As noted in footnotes 2 and 3, supra, the distinction between a “multifamily dwelling” and a “temporary shelter” under the zoning law turns on whether the accommodations are for overnight purposes versus residency for longer duration. There is no evidence in this case that the locus is used as an overnight accommodation for its residents. So-called transitional housing does not fall within the definition of “temporary shelter” simply because it is not permanent in nature. If that were the case, no housing arrangement could quality as other than temporary. The plaintiff derives no benefit from the affidavit of Norton S. Remmer, P.E. who opines that the housing in question constitutes a “temporary shelter” because his opinion is not based on the application of his expertise to facts, but instead is an opinion about the law. “[T]he interpretation of an administrative regulation is a question of law which must be decided by the court.” Corsetti v. Stone Co., 396 Mass. 1, 12 (1985).